[Civil No. 2529.  Filed December 13, 1926.]

[251 Pac. 446.]

CORNELIA PETERS, as Administratrix of the Estate of ALFRED J. PETERS, Deceased, Appellant, v. GEORGE TAYLOR and JOSEPHINE TAYLOR, Appellees.

Mr. Leon S. Jacobs and Mr. Joseph E. Morrison, for Appellant.

Messrs. Armstrong, Lewis & Kramer, for Appellees.

ROSS, J.—This action was instituted by Alfred J. Peters against George Taylor and others to establish a copartnership between plaintiff and Taylor, and to require an accounting of Taylor and of Josephine Taylor, his wife, Wane and Gail Taylor, their sons, Victor Lamb, Jr., and Roy Tharp, in whom, it is alleged, title of certain partnership property was held. The suit was begun and prosecuted through the trial by plaintiff, Alfred J. Peters. At the hearing of the case on appeal the death of the plaintiff was suggested and Cornelia Peters, as administratrix of the estate of Alfred J. Peters, deceased, substituted as the appellant in this court.

Plaintiff alleges the partnership was formed in August, 1902, "for the purpose of conducting farming and other operations in and around Tempe and other places and points in Arizona under the name and style of Peters & Taylor"; that they contributed in equal proportions about $2,000 in farming machinery, hogs and cattle; that Peters was to finance the partnership operations and Taylor to manage and conduct the farming operations; that they were to share equally in profits and losses; that for certain business reasons the bulk of the partnership property was to be held in Taylor's name.

It is alleged that from the profits made in farming the partners purchased cattle, horses and cattle ranches in Maricopa, Pinal and Gila counties, and farm lands in Maricopa county, taking title in the

name of Taylor, who in some cases placed title in the names of other members of his family. Then follows a description of the brands of cattle and horses claimed to be partnership property, but the title to which was recorded in the name of Josephine Taylor; also brands of cattle and horses in the name of Wane and Gail Taylor; also brands of cattle and horses in the name of George Taylor and Victor Lamb, Jr., jointly, and in the name of George Taylor and Roy Tharp jointly.

Property, real and personal, the record title to which was alleged to be in defendant Taylor, is described as the west half of section 25, township 1 north, range 4 east, Maricopa county, tools, farm, and ranch implements, cotton, cattle, horses and brands, consisting of the SA, 1C, PX, X $\oslash$ and $\approx$ brands. The plaintiff avers the value of the above property, as he is informed and believes, is in excess of $500,000—the liabilities against it not to exceed $100,000.

It is alleged that no settlement, partial or otherwise, has ever been had; that since March 1, 1915, defendant Taylor has refused to account with or to plaintiff for any of the partnership property, and on September 2, 1921, stated to plaintiff no partnership existed, and that therefore he had no accounting or settlement to make.

The defendants in their answer pleaded that in February, 1915, all partnership relations existing between plaintiff and defendant were by mutual consent dissolved and an accounting had of all transactions; that upon said accounting it was ascertained the plaintiff owed defendant George Taylor the sum of $17,000; also that plaintiff's cause of action was barred under the provisions of subdivision 2, paragraph 713 of the Civil Code of 1913, as before the filing of the complaint more than four years had

run since they had ceased to have any dealings with each other.

Following general and specific denials, the defendants allege that in 1902 Taylor and Peters engaged in two specific farming ventures, one on the Wilbur ranch and one on the Billups ranch, near Mesa, and between said date of 1902 and January 1915, they engaged in numerous separate farming ventures under different and distinct agreements; that during said period they purchased what is known as the Mons Ellingson ranch, consisting of one section, taking title in their joint names; that they purchased from the Packard Investment Company a half section, taking title in their joint names; that during said time the said Peters and Taylor, with one Jepson, bought what is known as the Kyrene ranch, the title to which was taken in part in Peters' name, in part in Taylor's name, and in part in Jepson's name, and in the names of members of their different families.

The defendants allege that in February, 1915, the only property plaintiff and George Taylor were jointly interested in was the Packard ranch and the Kyrene ranch; that at that time Peters and his wife deeded the Packard ranch to Taylor, and Taylor and wife deeded, or agreed to deed, whatever interest said Taylor had in the Kyrene ranch to plaintiff, Peters, with the agreement that if the said Peters within a reasonable time paid and discharged certain notes upon which Taylor was indorser or accommodation maker for Peters and paid Taylor the sum of $17,000 balance of account on the Packard ranch, and interest upon certain indebtedness, then Taylor would reconvey to Peters an undivided one-half interest in the Packard ranch, and if Peters should sell the Kyrene ranch for as much as $96,000 (the indebtedness against the same), he would pay to Taylor the sum of $8,000, and should he sell the

Kyrene ranch for more than $96,000 he would divide the excess equally between Taylor, Jepson and Peters.

It is further alleged on information and belief that in February, 1920, Peters sold a portion of the Kyrene ranch for $150,000, and that Taylor and wife conveyed at that time a portion of the Kyrene ranch, then appearing of record in their names, to said Peters, upon the agreement and understanding that Peters would surrender and release any and all claims in and to the Packard ranch and pay Taylor the sum of $15,000, and thereafter, on December 18th, deeded to said Peters, or to his named grantee, the rest of the Kyrene ranch in Taylor's name.

Upon the issues thus formed the trial was had before the court with a jury. At the close of the case, on, to wit, May 2, 1925, upon motion of the defendants, the court dismissed the complaint against Josephine Taylor, Wane and Gail Taylor, Victor Lamb, Jr., and Roy Tharp, on the ground that the evidence was insufficient as to them to support the allegations thereof.

There were submitted to the jury seven special interrogatories, which, together with the answers of the jury thereto, are as follows:

"No. 1. On or about August 31, 1902, did the plaintiff, A. J. Peters, and the defendant George Taylor enter into an agreement by the terms of which they were to jointly carry on or conduct the business of farming and other operations during an unspecified period of time and to share equally in the profits and losses of such business? Answer: Yes.

"No. 2. If you answer interrogatory No. 1 in the affirmative, did the plaintiff, A. J. Peters, and the defendant, George Taylor thereupon commence and thereafter continue operations under such agreement? Answer: Yes.

"No. 3. If you answer interrogatories 1 and 2 in the affirmative, did the plaintiff, A. J. Peters, and the defendant George Taylor pursuant to such agree-

ment purchase cattle, horses, and cattle ranges within the state of Arizona? Answer: No.

"No. 4. If you answer interrogatory No. 1 in the affirmative, did Alfred J. Peters and George Taylor then and there, to wit, on or about August 31, 1902, agree that Alfred J. Peters would be equally interested with George Taylor in all property acquired through farming and other operations entered into by George Taylor until the termination of partnership relations between them? Answer: No.

"No. 5. Was the agreement entered into between the plaintiff and defendant George Taylor, on to wit, August 31, 1902, limited to farming operations? Answer: Yes.

"No. 6. On or about February, 1915, did plaintiff, Peters, and defendant Taylor cease doing business together under the agreement of August 31, 1902? Answer: Yes.

"No. 7. On or about February, 1920, was there a settlement between plaintiff, Alfred J. Peters, and defendant George Taylor of the account between them arising out of their joint operations under the agreement of August 31, 1902? Answer: No."

Upon the return of the jury's answers to the interrogatories both parties moved for judgment. Plaintiff's motion was overruled, and defendant's motion was granted. The action being an equitable one, the jury's answers to the interrogatories were not binding upon the court but merely advisory. Interrogatory No. 7 was therefore rejected, the others being approved.

In addition, the court found as facts:

That plaintiff and defendant entered into a partnership agreement as alleged in plaintiff's complaint and carried on business thereunder from August 31, 1902, to February, 1915; that the partnership did not purchase any range cattle or cattle ranges in pursuance of said agreement, or at all. That defendant Taylor did not place the title of any partnership property in his name or the name of any member of his family or any of the other defendants, nor use any partnership funds for his individual use or bene-

fit. That the partnership agreement was not that plaintiff should share equally with defendant in all property acquired by the latter through farming and other operations until the termination of the partnership relation. That defendant Taylor has not in his possession any property, real or personal, in which plaintiff has any right, title, or interest, individually or otherwise. That the west half of section 25, township 1 north, range 3 east, Maricopa county, "together with the tools, farm and ranch equipment and other personal property on said premises and the brands SA, IC, PX, X ⌀ and ⌀ and the cattle and horses branded therein are the individual property of the defendant George Taylor and the plaintiff has no interest therein.

"That on, to wit, February, 1915, all partnership relations theretofore existing between the plaintiff and the defendant George Taylor were, by mutual consent, dissolved, and a settlement was then had between the plaintiff and the said George Taylor of all their partnership transactions and dealings, and thereupon and on said date there was a cessation of all dealings in which the plaintiff and the said George Taylor were interested as partners together.

"That as a part and parcel of the settlement of the said partnership dealings the plaintiff and his said wife, Grace Peters, on, to wit, February 1, 1915, under an oral agreement had between said plaintiff and said George Taylor, conveyed to said George Taylor an undivided one-half interest in the west half (W. ½) of section twenty-five (25), . . . known as the Packard ranch, upon condition that if the plaintiff should, within a reasonable time thereafter, repay to the said George Taylor certain sums of money and secure the release of said George Taylor from liability as accommodation maker or indorser on certain promissory notes executed by the plaintiff, the said Taylor would reconvey to the plaintiff the said undivided one-half interest in the said Packard ranch.

"That at about the time of said settlement aforesaid between the plaintiff and George Taylor of their partnership transactions and dealings, the said plain-

tiff and George Taylor had a certain undivided interest in a certain tract of farm land in the county of Maricopa, state of Arizona, known as the Kyrene ranch, and that at or about the time of the said settlement it was agreed by and between the plaintiff, Alfred J. Peters, and the said George Taylor that as to said Kyrene ranch the plaintiff should have possession thereof and should operate the same until such time as he (the plaintiff) could find a purchaser therefor, and that upon the sale thereof the plaintiff should pay certain indebtedness and liens and pay to the said George Taylor a portion of the surplus of the said purchase price.

"That the said Alfred J. Peters thereafter failed to avail himself of the right to repurchase the said undivided one-half interest in the said Packard ranch, and on or about February, 1920, did sell the said Kyrene ranch and did request of the said George Taylor that he deed to the said Alfred J. Peters that part of the Kyrene ranch then standing of record in his name; and the said George Taylor, pursuant to the arrangements made in 1915 and in confirmation and satisfaction thereof and in consideration of the said Alfred J. Peters waiving and surrendering his right to buy back said undivided one-half interest in the said so-called Packard ranch, which the said Alfred J. Peters then and there agreed to so waive and surrender, the said George Taylor consented to and did deed to the said Alfred J. Peters that part of the Kyrene ranch then standing of record in his name.

"Thereupon, and on about February, 1920, there was thus had a settlement between the plaintiff, Alfred J. Peters, and the defendant George Taylor of the account between them arising out of their partnership relations under the agreement of August 31, 1902, and at said time there was a final cessation of all dealings, direct or indirect, in which the plaintiff and the said George Taylor were in any wise interested together as partners, as aforesaid."

Upon the above findings the court, on May 27th, 1925, entered its judgment and decree dismissing plaintiff's complaint. The appeal is from the judg-

ment of May 27th and from the order overruling plaintiff's motion for a new trial.

Plaintiff has assigned twenty-one instances in which the lower court, it is asserted, committed error. Numbers one, two and three challenge the ruling of the court in the admission and rejection of evidence, all the others being directed to the sufficiency of the evidence to support the findings or the findings to support the judgment. We will take these assignments up in the order of arrangement in plaintiff's brief and make such disposition of them as we are satisfied under the law should be made. The parties will be referred to herein as they appeared in the trial court.

The first assignment involves the right of a party to impeach his own evidence—in this case a written document. This document is identified in the record as Defendant's Exhibit 23, and is in words and figures practically the same as Plaintiff's Exhibits "J" and "U." These exhibits are of the same date, to wit, January 26, 1912, and are made up of two and one-half pages, and the first page on each is headed with this legend, "Statement of Property Held by Alfred J. Peters and George Taylor as Partners," and this is followed by a list of securities, lands, mules, horses, cattle and cattle ranges, with estimated values, covering pages one and two; the half page (three) contains a list of liabilities. At the bottom of page two appears the unquestioned signatures of plaintiff and defendant. It was the contention of the defendant that the legend on each one of these exhibits was not there at the time the signatures were affixed, but was placed thereon subsequently. They were all in the possession of plaintiff, Exhibit 23 being found in the credit file of plaintiff in the National Bank of Arizona, at Phoenix.

The defendant placed upon the witness-stand one Milton Carlson, an expert in such matters, for the purpose of not only impeaching the integrity of Exhibit 23, but also Exhibits "J" and "U." Exhibit 23 was in the credit files of plaintiff and easily accessible to him; yet it was not offered by the plaintiff as evidence. Even though it was introduced by defendant we think it should be subject to the same tests of genuineness and credibility as Exhibits "J" and "U." It is evident defendant did not introduce Exhibit 23 for the purpose of proving a material part of his defense, but to disprove the plaintiff's case. On its face it was evidence of the plaintiff's claim of partnership just as were Exhibits "J" and "U," and it was hardly necessary for defendant to offer it for a limited purpose when its contents were the same as the contents of Exhibits "J" and "U," whose integrity was being impeached by the testimony of Carlson at the very time Exhibit 23 was offered. It seems to us that when defendant offered Exhibit 23 it must have been perfectly apparent to the plaintiff, the court, and all others that defendant's object was to place it side by side with "J" and "U" and subject it to the same crucible test. It was let in evidently with that view and without objection until it was sought by defendant to show that it and its companions were tarred by the same stick, and that they were not genuine as on their faces they purported to be.

The general rule unquestionably is that one who introduces documentary evidence to support his contention vouches for its integrity and is conclusively bound thereby. However, this rule, like all general rules, has its exceptions. It seems that where the offered instrument constitutes a part of a fraudulent scheme to obtain property from another the party offering it is not estopped from showing that

fact. In Jones' Commentaries on Evidence, volume 5, section 855, is found this statement:

"*Written instruments* are not witnesses within the general rule under discussion. Hence, a party may offer in evidence a bill of sale or other instrument in writing, if it forms a part of the transaction in issue, and afterwards show that the instrument had its inception in fraud."

In *Hoffman* v. *Hendricks*, 21 Okl. 479, 17 Ann. Cas. 379, 96 Pac. 589, it was held that a party introducing a written instrument containing a misdescription of premises was not estopped to show that fact. The court's statement of the law governing such a situation is as follows:

"It quite frequently occurs that, in order to establish a matter in dispute, a party finds it necessary to introduce a document as a foundation of further proof relating to such document, in order to sustain an issue on his part. In such case he is not absolutely bound by the terms of such document, so as to prevent him from introducing such further testimony relating thereto as may be necessary to show its connection with the matter in dispute which he is seeking to establish. This doctrine is supported by *Waldron* v. *Evans*, 1 Dak. 11, 46 N. W. 607; *Merchants' Bank of Macon* v. *Rawls*, 7 Ga. 191, 50 Am. Dec. 394; *Dowdell* v. *Wilcox*, 58 Iowa, 199, 12 N. W. 271; *Chrisman* v. *Gregory's Heirs*, 4 B. Mon. (Ky.) 474."

See, also, *Ace Mining & Milling Co.* v. *R. U. Mining Co.* (Mo. Sup.), 247 S. W. 172; *Henny Buggy Co.* v. *Patt*, 73 Iowa, 485, 35 N. W. 587; *Eckermann* v. *McDonough*, 107 Neb. 450, 186 N. W. 361; *Lyons* v. *Davy-Pocahontas Coal Co.*, 75 W. Va. 739, 84 S. E. 744; *Costello* v. *Gleeson*, 15 Ariz. 280, 138 Pac. 544; *Parry* v. *Parry*, 130 Pa. 94, 18 Atl. 628.

If the defendant had offered Exhibit 23 for the special purpose of thereafter showing that it constituted part of a scheme to defraud him of his property, it would hardly be contended that he might not

have done so. As heretofore stated, it was too apparent that that was his purpose.

It seems to us the facts as developed justified the court's ruling, and for that reason we hold the ruling was not erroneous.

George E. Lilley, testifying in behalf of defendant, had stated, in answer to questions, that for nineteen years he had been connected with an investment business in Phoenix, and that during most of the time he had known plaintiff and defendant and had had many business transactions with them, mentioning particularly the Packard ranch; said his company held a mortgage on such ranch, and that sometimes Taylor paid the interest and sometimes Peters; that when it became due they both paid the principal. He said: "We had a lot of other business transactions with them, not as individuals. . . . " He was then asked concerning loans made by his company to Taylor, and in reply stated, in effect, that over a period of fifteen years many loans, aggregating at one time as much as $20,000, had been made to Taylor upon cattle, usually feeders; that Taylor paid these loans; and that "Peters never paid any interest on cattle loans." Whereupon the following questions, objections, answers, and rulings were made and had:

"Q. (By Mr. Moore): During the course of your business transactions with George Taylor and A. J. Peters in regard to which you have testified, did Alfred J. Peters ever assert or claim any right, title, or interest in the cattle which were covered by chattel mortgages to secure the loans made by Taylor?

"Mr. Morrison: We object to it on the ground it is incompetent, irrelevant, and immaterial and not tending to prove or disprove any issue in the case, and on the further ground that Mr. Peters was under no obligation to make any such statement, and if the witness should so answer, that it is in no way tending to establish or prove any issue in this case, and the question is leading.

"The Witness: No; Mr. Peters never intimated to us that he had any interest in the cattle.

"Mr. Morrison: Object to it and move to strike it as not responsive. The question is whether he said it.

"Mr. Moore: Q. Well; did he say he had any interest?

"The Witness: No; he didn't say.

"The Court: Overrule the objection; deny the motion to strike."

The ruling permitting the witness to answer question and refusing to strike is assigned as error. It is said there was no occasion for Peters to assert any interest in the cattle, and his failure to do so was not evidence of no interest.

We think it is true that Peters' failure to tell Lilley he was interested in the cattle with Taylor as a partner would not as between him and Taylor ordinarily be any evidence that he was not interested, except for the fact that the witness made it plain that loans to the partnership were secured upon partnership property, as in the Packard ranch case. If the loans upon the cattle were negotiated by Taylor for his individual use and Peters knew thereof, he would of course be estopped to claim any interest in the cattle as against the mortgagee. This is quite evident. If the loan was for the partnership, as in the case of the Packard ranch, in all human probability that fact would have been disclosed to Lilley by Peters or Taylor or both of them. The fact that Peters did not sign any of the cattle notes, nor the chattel mortgages securing same, nor raise any question about their validity, would seem to us to have a tendency to show that his present contention that he was half owner therein may not be well founded. While the testimony may not be of very much probative value, we think it was competent.

The sustaining of an objection to the following question, propounded by counsel for plaintiff to wit-

ness Jepson, "Did you ever hear Mr. Peters state he was a partner in the cattle?" is assigned as error. The plaintiff justifies this assignment upon the ground that because the court allowed the witness Lilley to testify that Peters did not say he was interested in cattle, testimony should have been allowed that he did say he was a partner in the cattle business. This reasoning is not convincing. The question was objected to on the ground that an answer thereto would be incompetent unless made in the presence of Taylor, and the objection was sustained on that ground. There might be circumstances in which it would have been proper for the court to permit an answer to the question, but there is no fact or circumstance in connection with this question making it necessary for Peters to assert or deny an interest in said cattle, and any statement of interest that he might have made would have been self-serving. The question clearly called for no other kind of declaration.

Succeeding assignments (4 to 15, inclusive) are that the findings of fact are not supported by the evidence and that some of the findings contradict each other.

Under the decisions, assignments challenging the sufficiency of the evidence to support the court's findings do not call upon or require the appellate court to weigh the evidence or to pass upon the credibility of the oral or documentary evidence offered and received, that being the peculiar province of the trial court. But of course there must be some evidence of a substantial nature upon which to rest the findings; otherwise it is the duty of the appellate court to vacate and set aside the findings and any judgment based thereon. The trial below consumed some three weeks. Many witnesses testified, and numerous exhibits were placed in the record. The mass of evidence was not in accord. In most in-

stances that for the plaintiff was sharply combated by that of the defendant, and *vice versa*. The evidence was positive, direct and abundant that the partnership did not include the cattle and cattle ranges, as claimed by the plaintiff. On the contrary, plaintiff's evidence was quite as positive and direct that all such personal property belonged to the partnership. It was no easy task, we dare say, for the trial court to determine, from the great mass of testimony submitted, on which side the weight preponderated. We feel that with the trial court's advantages of personal observation and contact its determination is more likely to reach a just and equitable result than we can possibly reach from an inspection of the cold record.

In one respect the pleadings and the evidence were in harmony. The parties, it was agreed, were partners. It was the contention of defendant that the partnership as actually carried on during its existence was confined to specific farming operations or ventures; whereas plaintiff contended the partnership covered and included all property defendant acquired during the time they remained partners. This issue the court resolved in favor of defendant and found that the partnership property when the partnership was dissolved consisted of the Packard ranch including personalty thereon, and the Kyrene ranch. It would serve no useful purpose to state or analyze the evidence on this issue. It is enough to say it is substantial on both sides and in sharp conflict.

The court found the partnership was, by mutual consent, dissolved in February, 1915, and a settlement of all partnership transactions and dealings had, and that thereupon the parties ceased to deal with each other as partners. It is contended by plaintiff that such finding is in conflict with the further finding that they had dealings with each other in February, 1920, concerning the partnership. We think the con-

flict suggested is more apparent than real. The plaintiff alleged in his complaint that since March, 1915, defendant had refused to account with or to plaintiff for any partnership property. The defendant's answer admits this allegation, and as a reason therefor pleads the partnership was dissolved and an accounting and settlement had for all partnership transactions in February, 1915. That there was either a disturbance or severance of the partnership relations early in 1915, therefore, is agreed upon. Much evidence was directed to that issue. It was conflicting. The court found that the partnership was at that time dissolved by mutual consent and their accounts settled and adjusted, and in the finding gives the terms of such settlement—that is, that Taylor would have the Packard ranch and all personal property thereon and Peters the Kyrene ranch, the details of the transfers to be left for the future and to conform to certain predetermined and enumerated conditions. The finding that they had dealings in February, 1920, had reference to the consummation of the terms of. the settlement of February, 1915.

We know of no legal reason to prevent partners from dissolving the partnership and agreeing to a settlement by accepting each .other's individual obligation to cover any partnership differences, and if such a thing is done the obligations assumed in settlement are not partnership but individual obligations.

Assignments sixteen to nineteen, inclusive, make the point that the conclusions of law and the judgment are erroneous as being based upon findings not supported by the evidence. Our observations upon the point just preceding this one we think fully answer and dispose of these assignments.

Assignment twenty urges error was committed by the court in disregarding the jury's answer to interrogatory No. 7, for the reason, it is asserted, the uncontradicted evidence shows there was never any

settlement touching the cattle owned by the partnership. The evidence is that the partnership from time to time bought cattle and fed them as part of the partnership farming operations or ventures. We find no detailed statement as to the number nor as to what became of them, except that those on hand in February, 1915, together with other property thereon, went with the Packard ranch to Taylor in the partnership settlement. Taylor spoke of the partnership cattle as "feeders," and said "profits or losses in feeder cattle was considered the ranch—went in the ranch proposition. . . . " In one place in his testimony defendant, in answer to a question by counsel for plaintiff, said he had never made any settlement with plaintiff in regard to the cattle, and it is upon this answer that plaintiff so strongly relies for support of this assignment. The context, however, shows plainly the defendant's answer had reference to range cattle and not to feeder or partnership cattle.

The last assignment number twenty-one, raises the same question as the preceding assignment, to wit, that the evidence clearly shows that no settlement of any kind was ever had with relation to the cattle belonging to the partnership. We will add to what we have already said on this point that the finding of the court is contrary to the contention of plaintiff, and our investigation of the evidence convinces us that such finding is supported by substantial evidence.

We have carefully examined the different propositions advanced by the plaintiff in support of the appeal, and are satisfied from the whole record that the disposition of the case as made by the trial court was justified under the facts and circumstances presented to him. It was the duty of the court, having heard the witnesses and examined the different documentary pieces of evidence, to weigh that for the plaintiff and also the defendant and decide the differ-

ent questions of fact in dispute. To reverse the case it would be necessary for us to substitute our judgment of the weight of the evidence for that of the trial court.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.