[Civil No. 3021.   Filed November 4, 1931.]

[4 Pac. (2d) 395.]

THE STATE TAX COMMISSION OF THE STATE OF ARIZONA, THE STATE BOARD OF EQUALIZATION OF THE STATE OF ARIZONA, E. A. HUGHES, FRANK LUKE and M. A. MURPHY, Members of Said State Tax Commission and Said State Board of Equalization, and THE COUNTY OF YAVAPAI OF THE STATE OF ARIZONA, Appellants and Cross-Appellees, v. UNITED VERDE EXTENSION MINING COMPANY, a Corporation, Appellee and Cross-Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Charles L. Strouss, Assistant Attorney General, Mr. W. E. Patterson, former County Attorney, and Mr. F. E. Flynn, County Attorney, for Appellants and Cross-appellees.

Messrs. Cornick & Crable, Messrs. Rice & Mathews, and Messrs. Douglas, Armitage & McCann, for Appellee and Cross-appellant.

LOCKWOOD, J.—United Verde Extension Mining Company, a corporation, hereinafter called appellee, is the owner of a valuable producing mine, situated

in Yavapai county. The state tax commission, hereinafter called appellant, fixed the value of appellee's mine for the purpose of taxation for the year 1929 at $14,812,440. Appellee protested this valuation to the state board of equalization, which board, after hearing, denied the protest, and appellee, being dissatisfied therewith, appealed from such order to the superior court of Yavapai county, in accordance with the provisions of section 3065, Revised Code of 1928, paying the tax on the assessment as made under protest. A hearing was had before the court sitting without a jury, and on July 19, 1930, a judgment was rendered fixing the value of the property in dispute at $5,710,000, and ordering the excess tax paid by appellee refunded, together with six per cent. interest from the date of judgment. The state tax commission has appealed from the entire judgment, while appellee has cross-appealed on the ground that it was entitled to interest on the tax refunded from the date it was paid instead of from the date of judgment only.

The first assignment of error is that the court erred in fixing the value of appellee's producing mine at $5,710,000, for two specific reasons: (1) That it based its judgment upon the theory that the witnesses Cole and Calkins figured a value of copper at 18.11 cents per pound for all produced during the year 1929, while the evidence shows that these witnesses figured the value of copper at 17.51 cents during said period; and (2) that in determining the valuation of the mine it based its judgment on an average price of 15 cents per pound for copper over the time estimated for the exhaustion of the mine, and in so doing deducted from the valuation of $11,000,000 fixed by the witnesses Cole and Calkins the difference between the gross value of the total contents of the mine at a rate of 18.11 cents per pound for copper mined in 1929, and 16 cents per pound

for copper to be mined thereafter, and the gross value of the entire contents of the mine as of January 1, 1929, at 15 cents per pound, without reducing said difference to its present worth.

Were we to decide the case on a strict construction of this assignment of error, we would be compelled to hold without further consideration of the evidence that it was not well taken, for the reason that it is predicated solely on the assumed adoption by the trial court of certain parts of the evidence as the only basis for its judgment, while the court in rendering judgment expressly stated that, though it referred to the testimony of the witnesses Cole and Calkins in its memorandum opinion, the final judgment was in no sense dependent upon the testimony of such witnesses, but was based upon all the testimony in the case, including the opinions and conflicting estimates of all the witnesses and the documentary evidence. We think, however, that in fairness to both appellant and appellee, we should consider the assignment as being in effect that the evidence taken as a whole does not support the judgment, rather than limiting our consideration to the specific parts of the evidence referred to by appellant in its subdivisions of the assignment. We discuss, therefore, the broad question as to whether or not the trial court was justified on the evidence, taken as a whole, in determining the true value for taxation of appellee's producing mine for the year 1929 to be the figure set forth in the judgment.

In passing on an assignment of this nature, we must remember that the cardinal rule of this court, adhered to without exception for many years, is that, where the evidence is in conflict, we will not substitute our opinion thereof for that of the trial court. *Morgan* v. *Krook*, 36 Ariz. 133, 283 Pac. 287; *Peters* v. *Taylor*, 31 Ariz. 169, 251 Pac. 446; *First Baptist*

*Church* v. *Connor,* 30 Ariz. 234, 245 Pac. 932. And, if any reasonable evidence supporting such judgment appears in the record, the judgment will be sustained. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *Moeur* v. *Farm Builders Corp.,* 35 Ariz. 130, 274 Pac. 1043; *Welker & Clifford* v. *Merrill,* 32 Ariz. 90, 255 Pac. 991. It is further the rule that, where the amount of damages or the value of property or services is concerned, and a large number of witnesses fix varying sums as the proper estimate of the value of such damages, property or services, the trial court and jury are not bound to fix in the verdict or judgment the exact sum testified to by any one of the witnesses, especially when their conclusions are based upon a large number of factors, but may take part of the necessary factors from the testimony of one witness, and part from that of another, and a result anywhere between the highest and the lowest estimates which may be arrived at by using the various factors appearing in the testimony in any combination which is reasonable will be sustained by an appellate court. *Adams* v. *Cohn,* (Tex. Civ. App.) 28 S. W. 909; *Houston, T. & L. Co.* v. *Hankins,* (Tex. Civ. App.) 200 S. W. 237.

Section 3061, Revised Code of 1928, provides:

"The [tax] commission shall appraise and assess all patented and unpatented producing mines, within the state, and on or before the second Monday of July transmit to the several boards of supervisors the assessed valuation thereof."

Section 3068, which is the fundamental rule in Arizona applying to the valuation of all property, reads as follows:

"All taxable property must be assessed at its full cash value. The term 'full cash value,' when used in this chapter, shall mean the price at which property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property is

usually sold, and not the price which might be realized, if such property were sold at a forced sale.''

The first question which arises is as of what date the valuation is to be made. It is true that taxes are a lien on property, attaching on the first Monday in January of each year. (Section 3101, Rev. Code 1928.) But we think this does not necessarily imply that the valuation must be fixed as of that date, although such may be the usual custom. The general rule of law is that the valuation is to be made as of the date of the assessment itself which, as it appears, may, under our statute, be made any day between the first day of January and the second Monday in July, in the case of producing mines. Cooley on Taxation, 4th ed., par. 1062; *Pennsylvania C. Co.* v. *Porth,* 63 Wis. 77, 23 N. W. 105; *In re Jones' Assessment,* 105 Neb. 705, 181 N. W. 652. In fixing this assessment, the assessing body may make such investigations as may be necessary in order to determine all the facts bearing upon the true value of the property, but, no matter what methods they may use, or what evidence they have, the ultimate result must comply with the rule set forth in section 3068, *supra.* The question then arises whether, if an appeal is taken to the superior court, as provided in section 3065, *supra,* the court is confined in determining value to evidence *as it existed as of the date of the assessment,* or whether it may take into consideration other facts not then existing or known, in determining the true value as of the prior date.

We are of the opinion that the trial court is limited in determining the true value to evidence which was in existence at the time the assessment was made. This does not mean, of course, that it can only avail itself of the information actually known to or used by the assessing body, but it must be information which was in existence and relevant, and which could

have been used if the assessing body had had knowledge thereof, and a desire to use it, and the result must be a reasonable inference from such existing and relevant evidence only. Any other rule would give rise to uncertainty, and be provocative of litigation. To illustrate, A owns a piece of farming land which is assessed at $10,000. The land at the time, so far as anyone knows, is of no value except for farming purposes. He appeals to the superior court, under the provisions of section 3065, *supra,* and his case is heard a year later. Just before the date of trial a large and valuable oil-well is discovered on the property. Can this fact be shown to support a contention by the state that the property was under rather than over valued? B, on the other hand, has an equal acreage of similar character, except that thereon an oil-well is actually flowing in large quantities, and presumably, according to all indications then apparent, will continue producing for some time. He is assessed for $50,000, and takes the same appeal as A. Just before the date of trial the oil-well goes dry. May he show this as indicating that the property was over-assessed in the previous year? We think the two illustrations show the injustice of such a rule, and we hold, therefore, that the trial court in hearing an action under section 3065, *supra,* is limited in its evidence as above set forth.

The evidence presented consists chiefly of the testimony of eight expert witnesses, six appearing on behalf of appellee, and two on behalf of appellant. All of the witnesses agree as to the general basis on which the actual cash value of a producing mine should be arrived at. It may be stated substantially in the language of one of the witnesses as follows:

"The reserve of ore in the property, the measure of their salable contents of valuable metal, is ascertained. Its value is estimated in total, and from these

total gross proceeds, from the ore reserves, there are deducted the costs of recovery and sale, and the difference represents the net proceeds from these ore reserves. These net proceeds are then discounted to present worth."

Following this formula, the valuations arrived at by the expert witnesses for appellee for the producing mine as a going unit, including the smelter, railroad, and other personal property necessary for its operation, are as follows: Church, $7,300,000; Leisk, $8,450,000; Nickerson, $7,200,000; Dunning, $7,840,000; Tenney, $8,008,690; D'Arcy, $8,450,000. The witnesses Cole and Calkins for appellant, estimated the property at $11,000,000. From each of these, estimates should be deducted $2,393,595, the assessed value of appellee's railroad, smelter, etc., used in the operation of the mine, concerning which all parties are agreed. All of the witnesses for appellee took the ore reserves as they were known or reasonably estimated to exist as of the first day of January, *1929*, and based their estimate on an average price for copper over the period from that date to the one on which the mine would presumably be exhausted at *15 cents* per pound. Cole and Calkins, on the other hand, took the ore reserves as they were known or estimated as of the first day of January, *1930*, estimated the value of copper over the period it would take to exhaust the mine from that date at *16 cents,* and then added thereto the *actual* profits for 1929, and reduced the result so obtained to its present worth.

It will be seen that the system of calculation used by appellant's experts violated the rules of assessment above laid down by us, in that it took into consideration, not alone what the known facts, together with reasonable deductions therefrom, showed *at or before the time of the assessment,* but also facts not known or knowable until at least six months after

the assessment was made. Further, their estimate was based on the actual price received during the whole year of 1929 for the copper sold, and an estimate of 16 cents per pound for the future price of copper during the life of the mine. If they were entitled to consider what copper actually sold for *after* the date of the assessment and during the year 1929 in determining the value as of the second day of July or earlier, appellee would be equally entitled to show that copper, instead of being worth 16 cents is now quoted at about 7 cents per pound, and that many sales have been made at that price.

The various witnesses used differing estimates as to the ore which could reasonably be anticipated to be existing as of the date of the assessment, the cost of extraction and sale, and the probable future price of copper. It would extend this opinion to unreasonable length, and serve no useful purpose, were we to attempt to analyze all the testimony. It is sufficient for us to say, in summing up, that, taking the testimony in the most favorable manner on behalf of appellant, and assuming that the erroneous basis of calculation used by its witnesses was correct, the property was overvalued in the original assessment by at least $6,000,000, and taking the estimates of appellee's witnesses in their most favorable light in favor of appellee, it was overvalued some $9,000,000. It is not for us to determine in this proceeding whose estimate the trial court should have accepted, or which portion of the testimony of each witness he should have used in arriving at his conclusions. Nor is it necessary, as we have stated, that he should be able, by calculation based on specific evidence, to demonstrate to the cent or dollar that his conclusion was mathematically correct. *De minimus non curat lex.* It is sufficient to say that there is evidence in the record from which he could reason-

ably have reached practically the figure which he did determine. There being sufficient evidence in the record to sustain the finding of the trial court as to the valuation fixed by it on appellee's producing mine for assessment for the year 1929, such valuation must stand.

The second question is as to interest. Both parties have appealed from this portion of the judgment. The trial court allowed interest at the statutory rate from the date of judgment. Appellee contends that it is entitled to interest from the date the taxes were paid under protest. Appellant contends it is not entitled to interest at all. It is, of course, the general rule that, where interest is not stipulated for or authorized by contract or statute, it cannot be awarded against a sovereign government. *United States* v. *North Carolina*, 136 U. S. 211, 34 L. Ed. 336, 10 Sup. Ct. Rep. 920; *Seton* v. *Hoyt*, 34 Or. 266, 75 Am. St. Rep. 641, 43 L. R. A. 634, 55 Pac. 967. But the authorities are in hopeless conflict on the precise point as to whether, in the absence of express statute allowing it, interest may be allowed against the state from the date of payment in a suit to recover taxes paid under protest. The federal courts, and those of Indiana, Massachusetts, Michigan, New York, New Hampshire, South Carolina, South Dakota, Texas and Washington, apparently allow such recovery. On the other hand, those of California, Colorado, Iowa, Kansas, Oklahoma and Wisconsin seem to take the opposite view.

Under paragraph 4887, Revised Statutes of Arizona of 1913 (Civil Code), which until the adoption of the Revised Code of 1928 governed actions of this nature, interest was unquestionably allowed from the time of payment of the excessive taxes. This paragraph reads in part as follows:

"If it be determined by the court that the amount of such assessment is excessive, judgment shall be rendered in favor of the appellant and against the county for the amount of taxes which the court determines to be excessive, with interest thereon at the rate of six per cent. per annum *from the time of such payment,* and the costs of the appeal, which shall be paid as other judgments against the county." (Italics ours).

In 1928, section 3065, *supra,* was substituted for paragraph 4887, *supra,* and the portion of the last section above quoted was amended to read as follows:

"Should the court find that the assessment is excessive, then the court shall find the full cash value of the . property, and render judgment for appellant and against the county. . . . "

Was it the legislative intent to alter the law previously existing by denying interest?

We have previously held that, when a certain paragraph of the 1913 Code or the session laws following it is carried forward in changed language into the 1928 Code, the presumption is that the change is in form only, unless it clearly appears the legislative intent was to change the substance. *In re Sullivan's Estate,* 38 Ariz. 387, 300 Pac. 193. It will be noted that the 1928 Code merely provides that the court shall "render judgment for appellant and against the county," without indicating in any manner for what the judgment shall be. Had the later section carried forward one part of the judgment directed to be rendered in paragraph 4887, *supra,* and omitted the other, it might well be argued that it was the legislative intent that the omitted part was deliberately stricken from the law, and the substance of the statute changed. When, however, all description of what the judgment shall be is omitted, that rule of construction fails. It is presumed that the sovereign state, in dealing with its citizens, intends to apply

the same rules of abstract justice as it applies in actions between citizens. Certainly, it would be admitted to be both law and justice that, when A sues B to recover money wrongfully obtained, if he recover he is entitled, not merely to the principal sum paid, but also to interest from the date of payment. *Arkadelphia Milling Co.* v. *St. Louis S. W. R. Co.,* 249 U. S. 134, 63 L. Ed. 517, 39 Sup. Ct. Rep. 237; 33 C. J. 203. And in reason and logic, when the state compels one of its citizens under pain of forfeiting all rights of recovery, to pay in advance of suit a sum of money which it is afterwards adjudged was illegally demanded, the same principle of common justice would require that the state, to make the citizen whole, should repay not merely the sum illegally so obtained, but interest from the date the money was paid to it. Were this a case of a small taxpayer, who, in order to maintain his suit, was compelled to borrow money to pay the illegal tax, it would be recognized at a glance that full justice could only be done by repaying to him, not only the sum so paid, but interest thereon, and in principle no difference exists because the taxpayer in this case happens to be a large corporation which presumably had in its treasury the funds to pay the tax.

In view of the statute, and the general principles of justice which apply alike to rich and poor, we are of the opinion that the trial court should have awarded interest on the amount of taxes found to have been illegally collected from the date of payment.

The judgment of the superior court of Yavapai county is amended to read: "That the plaintiff, United Verde Extension Mining Company, a corporation, do have and recover judgment against the defendant Yavapai County in the sum of $192,626.78, together with six per cent. per annum interest thereon

from the 14th day of September, 1929, until paid, and for plaintiff's costs herein expended, amounting to $78.10,'' and, as so amended, is affirmed.

McALISTER, C. J., and ROSS, J., concur.