**206 P.2d 577**

## KIRKPATRICK v. CHRISTENSEN et al.

### No. 5086.

Supreme Court of Arizona.

May 23, 1949.

Leo T. Stack, of Prescott, for appellant.

Charles E. McDaniel and John R. Franks, of Prescott, for appellees.

STANFORD, Justice.

This litigation arose out of an unsuccessful partnership mining venture in the operation of the "Yeager Mine" in Yavapai County. While the action seeks a dissolution of the partnership, to which all of the parties are agreed, primarily it is an action in rem for the fixing of the rights of the partners with respect to the remaining partnership assets which consist of certain machinery and equipment. There are no general creditors of the partnership. Kirkpatrick (plaintiff-appellant) is not seeking a personal judgment against his copartners (defendants-appellees) for the services he rendered, nor for moneys advanced by him to the partnership, as he concedes that under the law such relief could not be granted. 40 Am.Jur., Partnership, section 468. As will be later developed, the matter before us resolves itself into a question as to the order of priority of payment out of the remaining assets. This involves an interpretation of the partnership agreements and a recitation of the facts.

In December, 1943, appellant had obtained a five-year lease and option on the "Yeager Mine" conditioned upon the doing of a certain minimum of development work and payment of royalties. In late May, 1944, appellant and appellees Markham, Westphalen, Christensen, Brashear and Murray orally agreed to form a partnership for the operation of this mining property. Later, on June 17, 1944, their agreement was reduced to writing and signed by all of the parties.

Appellant agreed to assign to the partnership his lease to said claims. Appellees Christensen, Brashear and Murray agreed to furnish one drag line and all machinery and equipment necessary to operate said drag line and to install said equipment and all other machinery and equipment necessary for the operation of the partnership venture. Markham and Westphalen agreed to furnish the sum of $5,000 to be deposited to the credit of the partnership in the Valley National Bank in Prescott, Arizona, said sum to be used for the purchase of such equipment necessary for the operation of said venture and to pay operative expenses.

The agreement stated that if it was necessary to raise additional funds Kirkpatrick was to advance such sums up to the amount of $2,000 and to loan such equipment as he might have without charge. This $2,000, with the further sum of $1,423.23, he claimed was advanced. Also Kirkpatrick agreed to act as superintendent of said enterprise and devote such time as necessary to the same at a reasonable salary to be set by a two-thirds vote of the partners; that any partnership matters were to be decided by a two-thirds vote of the partners; that the net returns of the partnership should be paid as follows: 75% to H. G. Westphalen and T. R. Markham until they were repaid the entire amount of $5,500 and that thereafter from said 75% of said venture there should be repaid to W. H. Kirkpatrick, such sums which he advanced to the partnership venture.

On November 7, 1944, a revised partnership agreement was entered into between the above-named parties. We find no important change in the agreement except the addition of the name of Charles M. Archibald, who became a member of the partnership, paying in the sum of $2500, and the change that appellees Markham and Westphalen had raised their contribution from $5,000 to $5,500. Thereafter from the 75% of said venture there was to be paid to Charles M. Archibald such sum that he may have advanced to said partnership venture.

This last agreement was the one in effect at the time this action was brought for the dissolution of the partnership and for the other purposes heretofore stated.

By each of the written agreements it was provided:

"That all equipment purchased by said partnership shall be purchased in the name of T. R. Markham and H. G. Westphalen, and title shall remain in their names until they shall have been repaid the full sum of Fifty Five Hundred Dollars ($5,500.00), at which time they shall execute a Bill of Sale to said partnership for all of said machinery."

The operations under the partnership between the parties having ceased on or about July 15, 1945, the owners of the mining claims gave notice of the termination of their lease with the appellant.

Thereafter appellant brought this action for the dissolution of the partnership, for compensation in the amount of $3,000 for services rendered as superintendent of the operations, and for the sum of $1,423.23 as the balance due him for money advanced for the use and benefit of the partnership, and sought to impress on the assets of the co-partnership a lien for his services and money invested.

A trial was had before the court, sitting without a jury, and findings of fact were made.

We quote the following from the judgment entered:

"2. That defendants Markham and Westphalen have a first and prior lien upon the proceeds derived from the sale of the equipment which is held by them as security in accordance with the partnership agreement to the extent of Fifty-Five Hundred Dollars ($5,500.00), said machinery and equipment being particularly descibed as follows: (Here follows the same list of equipment, supplies and personal property)

"3. That plaintiff, W. H. Kirkpatrick, have judgment against the partnership in the sum of Three Thousand Dollars ($3,-000.00) and that he have a first and prior lien on the proceeds of the assets sold, subject, however, to the priority of defendants Markham and Westphalen, as provided for in the foregoing paragraph, and that any proceeds of said sale over and above the lien for Fifty-Five Hundred Dollars ($5,500.00) due defendants Markham and Westphalen, to apply thereon.

"4. That plaintiff, W. H. Kirkpatrick, have judgment against the partnership in the sum of One Thousand, Four Hundred and Twenty-Three Dollars and Twenty-Three Cents ($1,423.23), and that he have a prior lien next in order and subject to the liens as herein provided for in paragraphs 2 and 3 immediately preceding, and that the moneys from the sale of said assets, subject to the liens, as aforesaid, be applied thereon.

"5. That plaintiff, W. H. Kirkpatrick, have judgment in the sum of Five Hundred Dollars ($500.00) against said partnership, and that the said W. H. Kirkpatrick have a fourth priority subject to the foregoing liens upon the moneys derived from said sale to the extent of these respective amounts.

"6. That the remaining proceeds from the sale of said assets, if any, after the satisfaction of the foregoing liens and priorities, be divided among the partners in such amounts as their interest in said partnership sale bears to the whole of said partnership as agreed to in 'Exhibit No. 3' in evidence.

"7. That after the partnership assets have been sold and the moneys derived therefrom applied to the satisfaction of the liens and priorities as herein directed, and a proper accounting is filed with this Court complying with these directions, order shall enter herein dissolving said partnership."

From said judgment the appellant gave notice of appeal to this court.

Appellant specifies as his assignments of error the following:

"The Court erred in awarding appellees Markham and Westphalen a first and prior lien on the proceeds of sale of the remaining partnership assets for $5,500.00 for the reasons:

"(1) Appellant was entitled to a first and prior lien on such proceeds for the sum of $1,423.23 because said sum was advanced to or for the benefit of the partnership under a parol agreement that the same should and would be a first charge;

"(2) Appellant is entitled to a charge or lien on the proceeds of sale of said remaining partnership assets for $3,000 for his services, as allowed by the court, but only as a deferred charge or lien."

As to the first assignment of error appellant contends that on September 5, 1944, there was a parol agreement entered into, the gist of which is shown by appellant's testimony, viz:

" * * * We had enough to take care of Mr. Turner's check at that time but not enough to take care of Mr. Christensen, and we were all in the Saint Michael lobby (Prescott, Arizona) and they put it up to me to take care of that payroll, and I finally agreed to do so with the understanding that that was to be a first charge against the property, and at that time both Mr. Markham and Mr. Westphalen told me that Mr. Murray was their man over here and that anything that Mr. Murray agreed to

was all right with them, and I put up that payroll, and I put up the payroll of October 5th because the partnership did not have money enough in the bank to take care of it."

The appellant maintains that the said agreement amounted to a parol modification of the then existing written partnership contract. The appellees sharply contradicted the appellant's testimony relative to an oral modification of such agreement and the trier of the facts evidently believed them and not the appellant. Furthermore on November 7, 1944, the second written agreement was entered into and that agreement in no manner gave preference to appellant, but retained the clause that was placed in the original agreement of June 17, 1944, giving preference to Markham and Westphalen. It is fundamental that all prior contemporaneous negotiations are merged into the subsequent written agreement. Valentine v. Shepherd, 19 Ariz. 241, 168 P. 643.

The appellant's second assignment of error is better expressed by his following proposition of law:

. "A partner who is entrusted by his fellow partners with the entire management of and responsibility for the partnership business is . entitled, irrespective of agreement, to just compensation for his services, and especially where the other partners are devoting . their entire time to their private affairs."

It will be noted from the judgment entered that the court found that the appellant was entitled to all he asked in his complaint for services rendered and moneys advanced to the partnership, but the court gave preference to Markham and Westphalen and not to the appellant.

In support of appellant's second contention, or assignment of error, he quotes the following from 40 Am.Jur., Partnership, section 124:

"* * * Where, however, one partner is intrusted with the management of the partnership business, and devotes his whole time and attention to partnership business at the instance of other partners who are attending to their individual businesses and giving no time or attention to the business of the firm, the case presents unusual conditions, is taken out of the general rule as to compensation, and warrants the implication of an agreement to make compensation. * * *"

To this law, of course, we must agree, but it cannot control in the instant case for the reason that the written agreement giving preference to the appellees Markham and Westphalen is controlling. The court found that the partnership agreements were not ambiguous, hence they must be given full force and effect.

The judgment of the trial court is further strengthened by a letter written by appellant to appellee Markham, directed to him at Long Beach, California, dated June 25, 1944, in which he, in part, said:

"* * * I agreed not to use any of yours or Hugo's money in a salary for myself. I did this, not because I did not think I had it coming, but because we were starting with very limited funds and because I know the property will make money and pay off. * * * I have no priority or security for any of this except the knowledge that we will make money. * · * * I let Riedman put your money ahead of mine, not because I did not know better, but because I know any money I put in this property will be safe and I will get it back. You have security on the equipment. * * * I am personally very much interested in seeing it a success, because that is the only way I will ever get my money out and make any money for myself. * * *"

■ This case was tried before the court without a jury. The testimony is somewhat conflicting, but unquestionably, if taken in the light most favorable to appellees, it supports the judgment. In the case of State Tax Commission v. United Verde Extension Mining Co., 39 Ariz. 136, 4 P.2d 395, 396, we said:

"In passing on an assignment of this nature, we must remember that the cardinal rule of this court, adhered to without exception for many years, is that, where the evidence is in conflict, we will not substitute our opinion thereof for that of the trial court. Morgan v. Krook, 36 Ariz. 133, 283 P. 287; Peters v. Taylor, 31 Ariz. 169, 251 P. 446; First Baptist Church v. Connor, 30 Ariz. 234, 245 P. 932. And, if any reasonable evidence supporting such judgment appears in the record, the judgment will be sustained. * * *"

Judgment affirmed.

UDALL, PHELPS, and DE CONCINI, JJ., and DONOFRIO, Superior Judge, concur.

Note: Chief Justice LA PRADE being ill, the Honorable FRANCIS J. DONOFRIO, Judge of the Superior Court of Maricopa County, was called to sit in his stead.