754 P.2d 295

**PITTSBURGH & MIDWAY COAL MINING COMPANY, Plaintiff/Appellee,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant/Appellant.**

**2 CA–CV 87–0251.**

Court of Appeals of Arizona, Division 2, Department B.

Sept. 30, 1987.

Review Granted June 7, 1988.

Jones, Jury, Short & Mast by Leslie T. Jones, Jr., Phoenix, for plaintiff/appellee.

Robert K. Corbin, Atty. Gen. by Steven R. Partridge, Phoenix, for defendant/appellant.

*OPINION*

LIVERMORE, Presiding Judge.

The Arizona Department of Revenue appeals from the following ruling of the trial court:

**I.  P & M's Refund Claim:**

**A.  Erroneous Collection:**

1.  P & M (Pittsburg & Midway Coal Mining Co.) paid the Department (Arizona Department of Revenue) $3,297,679.51 in Arizona use tax during the three year period ending December, 1979.

2.  P & M did so without protest under the erroneous assumption that the underlying transactions were not subject to New Mexico sales tax and, accordingly, not exempt from Arizona use tax.

3.  In December, 1979, the New Mexico Revenue Department assessed sales taxes against P & M for the underlying transactions.  P & M promptly filed an Arizona refund claim on January 10, 1980.  P & M and the Department agreed to suspend action on the refund claim while P & M contested the New Mexico assessment.  P

& M did so unsuccessfully.  It was finally determined in the New Mexico courts that the underlying transactions were subject to New Mexico sales tax.

4.  That the transactions in question *were* subject to sales tax in New Mexico exempted them from Arizona use tax. A.R.S. § 42–1409(A)(2).

5.  A.R.S. § 42–1413(A) provides for refund of excess use tax payments "if the Department determines that any amount ... has been paid more than once, or has been erroneously or illegally collected or computed...."

6.  The Department argues that the phrase "erroneously collected" within section 43–1413(A) means "collected without semblance of authority."  Because the Department had the semblance of authority to collect what then appeared to be a valid payment, there was no erroneous collection, according to the Department.

7.  The court rejects this strained and casuistic reading.

"Erroneously" is not as narrow or limiting a word as the Department's interpretation requires.  "Erroneous", according to *The Random House Dictionary of the English Language,* The Unabridged Edition, (1966), means "containing error; mistaken; incorrect."

The use tax payments collected by the Department from P & M in the three years ending December, 1979, contained error.  That is, they were founded upon an erroneous (mistaken, incorrect) view of New Mexico tax law.  P & M would not have paid Arizona use tax, nor would the Department have collected it, had they known that the transactions in question were subject to New Mexico sales tax.

Additionally, the purpose of § 42–1413 is to prevent the Department from unjustly retaining and to assure a taxpayer reimbursement of erroneous overpayments.  Neither the purpose nor the plain language of § 42–1413 limits a taxpayer's right to reimbursement to overpayments mistaking the Department's authority to tax, as distinguished from

overpayments mistaking which of two competing states should receive the tax on an interstate transaction.

8. The payments in question were erroneously made by P & M and erroneously collected by the Department within the meaning of A.R.S. § 42–1413.

### B. Arbitrary and Discriminatory Treatment:

1. After notification in December, 1979, that New Mexico would tax the transactions in question, and pending final resolution of the validity of New Mexico's claim, P & M paid $12,905,189.39 in Arizona use tax under protest. The Department has now reimbursed that sum, without interest, recognizing under A.R.S. § 42–1409(A)(2) that it has no right to keep it. (P & M's interest claim is the subject of the second portion of this court's ruling, infra.) The Department denied P & M's claim for reimbursement of amounts paid before December, 1979, however, because those amounts were *not* paid under protest.

2. A.R.S. § 42–1413(A) does not limit a taxpayer's right to credit or refund of an erroneously collected or computed overpayment to instances of overpayment under protest.

3. The deposition testimony of Kenneth E. McNabb, an audit supervisor and 25 year employee of the Arizona Department of Revenue, establishes that the Department regularly refunds overpayments in taxes, whether the taxpayer has paid under protest or not. When overpayment has occurred, according to Mr. McNabb, the Department does not customarily attach significance to whether the payment was under protest. In the present case the Department has foresaken its customary practice and policy. Though P & M has made a substantial overpayment,[1] the Department has seized upon P & M's failure to label its payment "under protest" as a reason for denying reimbursement. The Department has arbitrarily retained P &

M's property and unfairly discriminated against P & M in violation of the due process and equal protection clauses of the constitutions of the State of Arizona and the United States.

### C. The Procedural Requirement of Payment Under Protest:

1. The concept of payment under protest, as previously indicated, does not appear in section 42–1413(A) as a precondition to a taxpayer's entitlement to a refund of an excess payment. The concept appears rather in section 42–1421, which describes a taxpayer's right of action in the Superior Court against the Department.

2. A reading of section 42–1421 in its entirety suggests that its purpose is to guide the conduct of a taxpayer who, at the time of payment, knows or has reason to know of grounds to protest a tax demanded by the State. Subsection A precludes injunction, mandamus, or other equitable proceedings to prevent or enjoin the collection of the disputed tax. Subsection B provides for payment under protest, exhaustion of administrative remedies, and the subsequent right to sue for reimbursement.

3. P & M's initial determination that the transactions in question were not subject to New Mexico sales tax has previously been described. Although this interpretation of New Mexico law ultimately proved erroneous, the Department does not claim, nor does the court have any basis to conclude, that P & M's interpretation was negligent or unreasonable. This is not a case, accordingly, where an erroneous overpayment was based upon the taxpayer's neglect. *Swift & Company v. State Tax Commission,* 105 Ariz. 226, 462 P.2d 775 (1969); *Maricopa County v. Leppla,* 89 Ariz. 220, 360 P.2d 227 (1961).

4. There is reason to question whether A.R.S. § 42–1421 requires payment under protest as a precondition to action against the Department for denial of refund, where, as here, the taxpayer reasonably

---

1. The Department's argument that there was no overpayment, because the tax seemed valid when paid, is singularly unpersuasive. P & M paid twice—once to Arizona and once to New

Mexico—a tax that it had only to pay once—to New Mexico. That this unnecessary double payment was an *over* payment can be said with arithmetic certainty rare in law.

believed the payment proper at the time it was made. The court need not determine this point, however, for the following reasons:

a. The court has previously stated its conclusion that the Department has arbitrarily, discriminatorily, and unconstitutionally withheld P & M's refund. Against P & M it imposed a condition of payment under protest that it did not impose against other refund seekers. "Taxing authorities may not single out some taxpayers for selective enforcement of tax laws that apply equally to all similarly situated taxpayers." *Maricopa County v. North Central Dev. Co.*, 115 Ariz. 540, 543, 566 P.2d 688 (1977) rev denied. Having selectively asserted an otherwise unenforced condition as a barrier to P & M's refund, the Department may not compound the grievance by reasserting the same condition as a barrier to P & M's lawsuit for redress.

b. Moreover, even if payment under protest were formerly prerequisite under section 42–1421 to an action against the Department for relief from denial of a refund, it is so no longer. That purely procedural[2] requirement has now been abrogated by A.R.S. § 42–124(B)(2), as added by Laws 1985, Ch. 366, Section 13, eff. July 1, 1986. Because the amendment is procedural, it applies to the present case and relieves the plaintiff of any requirement there might otherwise have been of payment under protest as prerequisite to this cause. *In re Dos Cabezas Power District v. Arizona Public Service Co.*, 17 Ariz. App. 414, 498 P.2d 488 (1972).

D. Interest on $3,297,679.51:

1. For the reasons set forth above, the court concludes that P & M erroneously paid, the Department erroneously collected, and the Department shall now refund the sum of $3,297,679.51.

2. Though the Department contests its obligation to pay interest on other sums voluntarily reimbursed to P & M (the subject of part II, infra), the Department acknowledges a taxpayer's right to interest on a refund ordered by the court. P & M is accordingly entitled to interest on $3,297,679.51 at the statutory rate of 10% per annum from the date of payments totalling that amount until reimbursed in full.

II. Interest on $12,905,189.39:

1. As previously indicated, P & M paid Arizona use tax under protest after December, 1979, pending final determination of the applicability of New Mexico's sales tax. The Department voluntarily refunded the principal amounts paid under protest by P & M. The Department, however, has refused to pay interest. Though interest is recovered when a taxpayer achieves a refund through litigation, according to the Department there is no right to interest where the Department pays the refund on its own.

2. The distinction advanced by the Department is supported by the law of certain states. Other states hold it a distinction without a difference. See generally Annot., 88 ALR2d 823 (1963). As the Department forthrightly acknowledges, however, even some jurisdictions which hold to the distinction display a certain embarrassment about it. Thus New York notes the inequality and senselessness of the distinction, *Brodsky v. Murphy*, 25 N.Y.S. [N.Y.] 2d 518 [307 N.Y.S.2d 435, 439], 255 N.E.2d 700, 703 (1969), while Connecticut remarks its incongruity and obsolescence, *Marsh v. Brown*, 31 Conn.Sup. 134, 325 A2d 466, 470 (1974).

3. Happily, Arizona escapes such embarrassment. Here the distinction does not hold. A.R.S. § 44–1201 provides 10% interest on "any loan, indebtedness, judgment or other obligation" unless a different rate is contracted for in writing. The Depart-

---

2. The substantive right to refund of an erroneously collected tax, as set forth in § 42–1413(A), is not conditioned upon payment under protest. To whatever extent that payment under protest was established in § 42–1421 as a condition to suing for a refund, that condition was procedural, not substantive. See, e.g. *Southern Pacific Co. v. Cochise County*, 92 Ariz. 395, 406, 377 P.2d 770 (1963). ("[I]f the taxpayer desires to raise a question as to his taxes he is compelled to scrupulously follow the statutory procedures.")

ment's obligation to refund P & M's payment was an "indebtedness ... or other obligation" within the meaning of this statute. *State Tax Commission v. United Verde Extension Mining Co.*, 39 Ariz. 136, 4 P.2d 395 (1956) [1931], as interpreted by *Miners & Merchants Bank v. Heron*, 46 Ariz. 71, 83, 47 P.2d 430 (1935).

4. The Department's voluntary payment of principal does not relieve it of its interest debt. An obligee of a private citizen, repaid principal but denied rightful interest, can sue for unpaid interest under § 44–1201. An obligee of a state agency is in no different position. *United Verde*, supra, 39 Ariz. at 146, 147 [4 P.2d 395].

5. P & M is therefore entitled to receive interest at 10% per annum on $12,905,-189.39 from the dates of the payments which totalled that amount.

III. Conclusion:

For the reasons set forth above, the court finds in plaintiff's favor and awards plaintiff the following sums against defendant:

1. The principal sum of $3,297,679.51.

2. Interest thereon at 10% per annum from the dates of the payments comprising that amount until paid in full.

3. Additional interest on $12,905,189.39 at 10% per annum from the dates of payments comprising that amount until paid in full.

\* \* \*

■ On appeal, the Department reasserts its arguments that it has no obligation to refund sums not paid under protest nor must it pay interest on sums paid under protest but refunded before action is brought. For the reasons stated by the trial court, we disagree and affirm.

The assertion by the Department of the right to retain property to which under law it is not entitled is breathtaking. It is not, however, without precedent. In *Maricopa County v. Arizona Citrus Land Co.*, 55 Ariz. 234, 236, 100 P.2d 587, 588 (1940), the court applied the "harsh" rule "that taxes voluntarily paid without protest, and not under duress, cannot be recovered by the

taxpayer" in the absence of a statute authorizing such refund. That rule has been followed in *Swift & Co. v. State Tax Commission*, 105 Ariz. 226, 462 P.2d 775 (1969), and *City of Phoenix v. Phoenix Newspapers, Inc.*, 100 Ariz. 189, 412 P.2d 693 (1966). The rationale advanced is that to allow refunds in such cases invites governmental fiscal chaos because governments in the management of their affairs must rely on the apparent availability of funds and cannot be expected to come up with large sums to refund taxes paid and utilized in prior years. See *Southern Pacific Co. v. Cochise County*, 92 Ariz. 395, 377 P.2d 770 (1963).

For two reasons, we decline to follow these authorities in this case. First, the finding of the court that the Department customarily refunds payments made in error is supported by the record. While the Department apparently may legally retain payments made in error without protest, we do not believe that entitles it to pick and choose which payments it will keep. To allow an administrative agency, in its unfettered discretion, to decide to refund small erroneous payments and keep large ones or to refund to individuals but not to businesses or to refund to those it likes but not to those it dislikes, would be unconstitutional under the equal protection clause of the 14th Amendment to the United States Constitution. *Southern Pacific Co. v. Cochise County*, supra. Second, we believe that the language of A.R.S. § 42–1413 permitting repayment of taxes "erroneously or illegally collected or computed" requires repayment in this case. That language is sufficiently distinct from the language construed in the *Swift & Co.* and *Phoenix Newspaper* cases so as not to be controlled by them. Beyond that, statutes are to be construed as a whole, giving effect to all their provisions. *Gortarez v. Smitty's Super Value, Inc.*, 140 Ariz. 97, 680 P.2d 807 (1984). The primary purpose of A.R.S. § 42–1421, in requiring payment under protest, is to deny the taxpayer the power to refuse to pay his taxes on the ground that they are not due. It requires that the taxes be paid and then a suit for

refund brought. *Smotkin v. Peterson*, 73 Ariz. 1, 236 P.2d 743 (1951). The purpose of § 42–1413 is to allow a refund of taxes erroneously paid. By its terms it does not require that refunds be given only when payments were made under protest. Accordingly, refunds must be given of all erroneous payments.

■ With respect to the Department's claim that it need not pay interest for the time it retained taxes paid under protest so long as it refunded those sums before suit was brought, we agree with the reasoning of the trial court. *State Tax Commission v. United Verde Extension Mining Co.*, 39 Ariz. 136, 4 P.2d 395 (1931). The state cannot require payment, when a dispute as to the propriety of payment exists, then concede that payment was not due, and refuse to pay for the use of the money. That would be a taking without compensation.

Affirmed.

ROLL and FERNANDEZ, JJ., concur.