[Civil No. 3592. Filed July 2, 1935.]

[47 Pac. (2d) 430.]

MINERS AND MERCHANTS BANK, a Corporation, Appellant, v. JAMES HERRON, Jr., GEORGE W. BURGESS and ENIS THURMAN, as Members of and Constituting the Board of Supervisors of the County of Pinal, State of Arizona, Appellees.

Messrs. Sutter & Gentry, for Appellant.

Mr. Charles H. Reed, Special Attorney for Pinal County, for Appellees.

ROSS, J.—This is a proceeding in *mandamus*. It appears from the plaintiff's complaint that in 1919 Pinal county issued and sold, under the provisions of chapter 2, title 52, Revised Statutes of Arizona 1913 (paragraphs 5266–5285), 1,000 "County of Pinal Road Bonds" for $1,000 each, bearing interest at 5½ per cent. per annum as evidenced by attached coupons payable on May 1st and November 1st of each year; that beginning with May 1, 1930, and ending May 1, 1934, the county failed to pay interest coupons as they fell due in the sum of $39,517.50; that the plaintiff is the owner and holder of 45 of said bonds which matured November 1, 1933, and which had not been redeemed or paid; that there was available in the county "Interest Fund," for application in payment of interest coupons $23,641.90, leaving a deficit in the bond interest fund of some $18,000; that such deficit was the result of annual tax levies for the amount of interest coupons only and the failure of the defendants, and their predecessors, to make any allowance for tax delinquencies.

Plaintiff seeks to compel the defendants, constituting the board of supervisors of Pinal county, to make a tax levy for the tax year 1934–1935 on the property of the county, in addition to all other tax levies, including a tax for interest coupons due November 1, 1934, in the sum of $15,125, and May 1, 1935, in the sum of $13,750, sufficient to take up unpaid and overdue 1930, 1931, 1932 and 1933 interest coupons; also to pay interest at 6 per cent. per annum on such coupons from their due dates until paid; also to pay interest on the $45,000 (represented by the 45 past-due bonds) at the rate of 5½ per cent. per annum. In other words, plaintiff seeks to compel the defendants to levy a tax sufficient to pay the balance of $39,517.50, past-due and unpaid interest coupons,

after crediting it with "Interest Fund" on hand; also to levy a tax in the sum of $1,704.83 for interest upon said past-due interest coupons at 6 per cent. per annum, and a further tax levy in the sum of $1,870 for interest at the rate of 5½ per cent. per annum on the defaulted road bonds owned by the plaintiff, from and after the date of their maturity.

Defendants filed a general demurrer to the complaint. The court sustained the demurrer and, plaintiff refusing to amend its complaint, dismissed the proceeding. Plaintiff has appealed.

■ The act authorizing the issuance and sale of these bonds is the measure of the rights of the holders and also the rights of the county. The act must be read into the contract between the bondholder and the county. The duty to pay, and the time, place and manner of payment must be found in the act. The method therein stated of procuring money with which to meet the interest coupons and the principal is exclusive.

Looking at the act, it seems to us that it provides quite adequately for the caring for the interest coupons as they fall due. We quote the pertinent part of paragraph 5278 (chapter 2, title 52, Revised Statutes Arizona 1913), as follows:

"5278. After said bonds or other evidences of indebtedness are issued, if such indebtedness is created by a county . . . and until all of said bonds or other evidences of indebtedness of such county are redeemed, the board of supervisors of such county where such indebtedness is created under the provisions of this chapter . . . is authorized and it shall be its duty to levy and cause to be collected a tax in addition to the amount of taxes which now or may hereafter be authorized by law for state and county purposes, at the same time and in the same manner as other taxes are levied and collected by such county . . . upon all taxable property in such county . . .

sufficient to pay the interest on all bonds issued when such interest shall become due, and said tax when collected shall constitute a fund for the payment of the interest on said bonds or other evidences of indebtedness and shall be called 'Interest Fund.' ''

"Other taxes" are levied annually on the third Monday in August in each year, paragraph 4844, Revised Statutes Arizona 1913 (now section 3100, Rev. Code 1928), and are due and payable one-half on the first Monday in September and one-half on the first Monday in March of each tax year. Section 3110, Rev. Code 1928.

It appears that the defendants duly made the levy annually, when other taxes were levied, to pay the interest coupons as they fell due, and that if all the taxpayers had paid their taxes the county would have had sufficient funds to pay the coupons on their due dates. It was because some of the taxpayers failed to pay their taxes that the county was not able to pay the interest coupons. It also appears from the complaint that the annual levies made by the defendants, and their predecessors, to meet interest coupons had been, over a number of years, at a rate to raise the amount of the taxes and no more, and that the collections thereunder had been sufficient to care for interest coupons up to 1930; that of those due in 1930 only seven were unredeemed and of those of 1931 only four. The principal deficits in the "Interest Fund" were in the tax years 1932 and 1933 and, as indicated above, resulted because of the delinquencies of many of the taxpayers.

The defendants contend that *mandamus* does not lie to compel them to make a levy on the property of the county to pay the coupons due in 1933 and prior thereto, because the law does not impose upon them that duty; that the law imposes upon them the duty to levy and collect for the tax year 1934–1935,

and every tax year, a tax "sufficient to pay the interest on all bonds . . . when such interest shall become due," and that this language means that the tax must be levied and collected before the interest becomes due, and not afterwards. In other words, that paragraph 5278, *supra,* does not expressly authorize the board of supervisors in any tax year to levy and collect any sum or amount for the "Interest Fund" over and above "sufficient" to meet the interest coupons falling due that year, and that any levy for interest coupons for previous years is unauthorized and illegal. To sustain this contention they cite *Board of Commissioners of Grand County* v. *King,* (C. C. A.) 67 Fed. 202, reading at page 205, as follows:

"Under our system of government, therefore, the power to tax is a legislative function exclusively, and cannot be exercised except in pursuance of legislative authority. There is no connection between the power to contract debts and the power to levy taxes. The power to contract a debt does not imply the power to levy a tax to pay it. A county may lawfully contract debts which it has no power to levy a tax to pay. And a court may have jurisdiction to render judgment against a county without having the power to coerce the county authorities to levy a tax to pay it. A court has no taxing powers, and can impart none to the county authorities. It has no jurisdiction to coerce the levy of a tax except where the law has made it the clear and absolute duty of the proper authorities of the county to levy such tax."

They also cite to this contention *Supervisors of Carroll County* v. *United States,* 18 Wall. 71, 77, 21 L. Ed. 771, 773:

"It is very plain that a *mandamus* will not be awarded to compel county officers of a State to do any act which they are not authorized to do by the laws of the State from which they derive their powers. Such officers are the creatures of the stat-

ute law, brought into existence, for public purposes, and having no authority beyond that conferred upon them by the author of their being. And it may be observed that the office of a writ of *mandamus* is not to create duties, but to compel the discharge of those already existing. A relator must always have a clear right to the performance of a duty resting on the defendant before the writ can be invoked.''

These statements of the law are doubtless correct. They not only have the sanction of years, but the approval of many courts of the country, and are in accord with sound reasoning. But the question is, Are they applicable to the facts in this case? The language of paragraph 5278, *supra,* seems to imply that the interest on bonds is segregated into annual units and is a matter to be finally disposed of during the year, yet the creation of an ''Interest Fund'' would tend to refute that idea and convey the thought that this is a permanent fund into which should be paid all levies and collections for interest, whether during the current year or previous years. It is a fund or account that is to have permanent existence until all interest is paid. In other words, the ''Interest Fund'' ''shall constitute a fund for the payment of the interest on said bonds. . . . '' The ''Interest Fund'' is coexistent in time and purpose with the interest debt. We think it was the purpose of the law-making body, as collected from said paragraph 5278, *supra,* to make it the duty of the board of supervisors to levy and collect a sufficient amount of taxes to liquidate the interest coupons past due and falling due, and that such duty is a continuing one until fully performed, and that its performance may in a proper case be compelled by *mandamus. City of Austin* v. *Cahill,* 99 Tex. 172, 88 S. W. 542, 89 S. W. 552.

Unless this is the rule the legislative intent may be defeated. Clearly it was intended that all

interest should be paid as it became due and, while the language employed to convey this thought imposes on the board of supervisors the duty to levy and collect the tax in advance of the due date, it should not be construed as forbidding the board to levy and collect for deficiencies occurring by reason of insufficient collection or delinquencies. What we are trying to say is well expressed in *Norris* v. *Montezuma Valley Irrigation District*, (C. C. A.) 248 Fed. 369, 373, as follows:

"In order to give full force and effect to every portion of the statute there must not only be an assessment and levy, but the debt must be paid. A statutory obligation of a municipal corporation or *quasi* municipal corporation to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied to actually pay the debt. *East St. Louis* v. *Amy*, 120 U. S. 600, 7 Sup. Ct. 739, 30 L. Ed. 798; *Rialto Irr. Dist.* v. *Stowell*, [C. C. A.] 246 Fed. 294; *Boynton* v. *District Township of Newton*, 34 Iowa 510."

Another statement of the principle we are discussing is found in *Jinkins* v. *Entzminger*, 102 Fla. 167, 135 So. 785, 792, as follows:

"The rule is that a statutory obligation of a public corporation or public *quasi* corporation to pay its debt, or to fix a rate of levy necessary to pay its debt, is not satisfied by an assessment and rate levy necessary to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied to actually pay the debt."

The tax now asked for, to pay defaulted interest coupons for the year 1933 and prior thereto, is a cumulative tax. It has once been levied and col-

lected in part, not from all the property of the county, but from a large percentage thereof. A relevy will require those taxpayers who have already paid their full assessments to contribute towards the payment of the delinquencies of those who have failed to pay their taxes. This unequal and unfair burden may legally be imposed upon the taxpayer who promptly pays his taxes (*State* v. *Common Council,* 15 Wis. 30, 33), but it ought not to be imposed except when the legislative intent makes it imperative, and not then unless it reasonably appears that legal process against the nonpaying taxpayer will avail nothing.

The law provides a method of collecting delinquent taxes (chapter 103, Laws Reg. Sess. 1931, and amendments); the procedure being to advertise the property and sell it if a purchaser can be found who is willing to pay the whole amount of the taxes, interest, and penalties, or, if not, to strike it off to the state, and all moneys realized thereunder are to be distributed by the county treasurer to the particular fund for which it was levied. We may assume, in the absence of any allegation in the complaint to the contrary, that the officers are doing and performing their official duties and endeavoring to collect the back taxes, as the law provides, and that if the money due on delinquencies has not been received that it, or at least a considerable portion of it, will be received and paid into the ''Interest Fund'' for application to interest deficits. We may in this connection suggest that delinquencies are not always due to the taxpayer's inability to pay, but frequently the delay in paying the tax is due to litigation between the taxing authorities and the taxpayer over the valuation of the property or some other question. If that should happen to be the situation in Pinal county, it would, we think, be inequitable to compel the levy before the litigation is disposed of. It is common

knowledge that many of the larger taxpayers of the state have taken their tax matters into the courts, contending that the valuations placed upon their properties are excessive, and that much of the taxes of the state is in this way tied up.

 The complaint alleges the deficit in the interest coupon fund for certain named years, a demand on defendants to levy and collect from the property of the county a sufficient amount to pay such deficit, and the defendants' refusal to make such levy. In view of the law and the well-known facts, do such allegations show that plaintiff has a clear right to the writ, or, stating it otherwise, do they show that the law clearly enjoins upon defendants, by virtue of their office, the duty to make the levy? As is said in *Supervisors of Carroll County* v. *United States, supra:*

"A relator must always have a clear right to the performance of a duty resting on the defendant before the writ can be invoked."

The general rule is stated in 38 Corpus Juris 691, section 261, as follows:

"In accordance with elementary principles *mandamus* will not lie to compel a municipal board or officer to do any act which he is without authority or power to perform. It is also essential to the right to have the writ issued that the respondent officer or board should be under a plain legal duty to perform the act. The writ will not issue where the duty or power is doubtful."

And in 38 Corpus Juris 691, section 260, it is said:

"Following the general rule *mandamus* will not lie in any case against municipal acts or boards, unless the relator's right to the performance of the act sought to be compelled by the writ is clear."

 In the absence of an affirmative allegation or showing of the improbability of collecting the delinquent taxes because of dereliction of duty by the

taxing officers, or other good and sufficient reason, we think plaintiff's right is very doubtful, that it certainly is not clear, and that in such circumstances the writ should not issue. It is on the plaintiff to show his right to the writ, not on the defendant to show he has no clear right to it. The burden of alleging and proving the right is up to him who asserts it. As a matter of fact and law, the deficit in the "Interest Fund," to which we have made frequent reference, where a levy has been made to meet the tax, is only nominal and the levying officer or board ought not to be compelled to make another levy for the same object until the improbability of the previous one being realized or collected is shown.

██ Where there are sufficient uncollected taxes to meet interest and principal of bonds, *mandamus* will not issue to compel another levy, the presumption being that taxes will be paid. *Board of Commrs. of Adams County* v. *Heath,* 79 Colo. 429, 246 Pac. 794. 38 Corpus Juris 781, § 429, states the rule as follows:

"Whenever there is a right to compel by *mandamus* the levy of a tax to raise a certain sum within the taxing limit, the court can compel a relevy or an additional levy of such a rate as will raise the sum necessary to satisfy the requirement, even at the maximum rate allowed by law. But as a rule where a tax has once been levied by a municipal corporation for the payment of a judgment, bond, or other indebtedness, and is still uncollected in whole or in part, or unaccounted for, another levy or a relevy will not be compelled."

It might be suggested that the *onus* is upon the defendants of showing the uncollected taxes are collectible, or that payment is delayed by litigation or for other reasons, but such a rule would place upon defendants the burden of showing plaintiff had no clear right to the writ, violating the rule requiring plaintiff to make his right clear. Tax levies and all

proceedings to enforce them are matters of public record, open to the bondholders and all others alike, so it cannot reasonably be said defendants, because of their official position, are possessed of knowledge as to the delinquencies and the reasons therefor, not available to others.

■ We do not think plaintiff is entitled to a judgment compelling defendants to levy and collect a tax to pay 6 per cent. per annum interest, or any interest, on coupons from maturity until paid. The coupons represent the contract rate of interest on the bonds, which is 5½ per cent. per annum. The act authorizing the bond issue provides for interest on the bonds only. It is silent as to interest on overdue interest. If, therefore, interest on coupons is recoverable it is not because the act authorizing the bond issue so provides, nor is it by virtue of any agreement between the county and the bondholder. The legal rate of interest, unless a different rate is contracted for in writing, is 6 per cent. per annum. If a different rate is contracted for in writing, a judgment upon the agreement will bear such rate. Section 1883, Rev. Code 1928. The legal rate is here sought. The defendants cannot be compelled to levy a tax for such rate because no such rate of interest is stipulated in the agreement or law authorizing the bond issue, their power to make a tax levy being only such as the law specifically provides or necessarily implies. See authorities cited.

■ There is another reason why the writ should not issue directing the defendants to make the levy to pay interest upon interest. The only theory upon which a right exists to demand interest upon the interest coupons is that of damages for breach of contract or for the detention of money. What is sought is not, in the true sense, interest. The rule

with regard to the United States, a state or its political subdivisions as to liability on its obligations after the date of maturity, is that no liability for such interest exists unless an express consent to pay same has been manifested by the act of the legislature or by lawful contract of its executive officers made within the scope of their authority. *United States of America* v. *State of North Carolina,* 136 U. S. 211, 10 Sup. Ct. 920, 34 L. Ed. 336; *Carr* v. *State,* 127 Ind. 204, 26 N. E. 778, 22 Am. St. Rep. 624, 11 L. R. A. 370; *Albert Meyer* v. *City and County of San Francisco,* 150 Cal. 131, 88 Pac. 722, 10 L. R. A. (N. S.) 110; *Heath* v. *Green City Irr. Dist.,* 91 Colo. 202, 13 Pac. (2d) 1113; *Seton* v. *Hoyt,* 34 Or. 266, 55 Pac. 967, 75 Am. St. Rep. 641, 43 L. R. A. 634; *Salthouse* v. *Board of Commissioners of McPherson County,* 115 Kan. 668, 224 Pac. 70; 15 R. C. L. 17, § 14.

The plaintiff, as it must, admits that the law is as above stated, but contends that is not the rule in this jurisdiction since the decision in *State Tax Commission* v. *United Verde Extension Min. Co.,* 39 Ariz. 136, 4 Pac. (2d) 395, 398. We think that that case does not change the rule, but, on the contrary, recognizes it as the law in this state. We there said:

"It is, of course, the general rule that, where interest is not stipulated for or authorized by contract or statute, it cannot be awarded against a sovereign government. *U. S.* v. *North Carolina,* 136 U. S. 211, 10 Sup. Ct. 920, 34 L. Ed. 336; *Seton* v. *Hoyt,* 34 Or. 266, 55 Pac. 967, 75 Am. St. Rep. 641, 43 L R. A. 634."

A careful reading of the case will show that the court's decision allowing interest in that case is founded upon its conclusion that the interest was authorized by statute. What was said in addition thereto was more in the nature of an explanation of

the justice of requiring interest to be paid under the circumstances than otherwise.

■■■ Was it the duty of the defendants to levy and collect a tax to pay interest upon unredeemed bonds after their maturity? The correct answer to this question depends upon the terms of the law authorizing their issuance. Defendants contend that the statute nowhere provides for interest except as represented by the coupons attached to the bonds and that this, in effect, prohibits the payment of any other or additional interest. It is said that neither the law nor the bond contract contemplated or provided for a default of the principal at maturity, or what should be done by the board of supervisors in case the bonds were not paid when due, and that such omission cannot now be supplied by the courts. There are expressions in the statute that negative defendants' contention. Section 5278 makes it the duty of the board of supervisors annually to levy a tax on the property of the county to pay interest "until all of said bonds . . . are redeemed," and not until their maturity. Section 5279 imposes the duty on the supervisors to levy an annual tax on the property of the county "for the purpose of redeeming said bonds . . . when the same shall mature," which tax when collected shall be called the " 'Redemption Fund,' and shall be used for the redemption of said bonds . . . according to the number of their issue." It is true this section seems to provide that the duty to levy a tax to pay bonds extends only to the date of their maturity. However, section 5281 makes it the duty of the county treasurer "when any bonds" of the county "shall mature" to give notice for four weeks, in a newspaper of the character designated, of the intention of the county to redeem such bonds, stating the amount thereof. It is further provided

in said section that if the bonds so noticed for redemption are not presented for payment at expiration of four weeks after the date of notice, they shall cease to draw interest, and if not presented for payment within three months from the date of notice the treasurer shall apply the money to the redemption of the bonds next in the order of the number of their issue. From this last section it seems to have been intended to allow interest on bonds until they are noticed for redemption and for at least four weeks thereafter. Defendants suggest that such provision was probably intended to apply to call bonds, or bonds the county had an option to pay, any time before maturity. But we think a more reasonable view is that the lawmakers intended the bonds to draw interest after maturity, at the same rate as before, and until paid. Section 5281 (in lines 1 and 2), in terms, limits its provisions to matured bonds and does not, either directly or inferentially, extend to call bonds of the county.

We have arrived at the conclusion, as may be gathered from what we have said, that the law under the facts as disclosed by plaintiff's complaint, does not enjoin the duty upon the defendant board of supervisors to make a levy to pay interest coupons falling due during the year 1933 and prior thereto; also, that the law imposes no duty upon the board of supervisors to levy and collect a tax to pay interest upon interest, as represented by the coupons from their maturity; but that the law does enjoin upon the defendant board the duty to levy and collect a tax to pay interest upon unpaid bonds after their maturity.

The judgment of the lower court is accordingly reversed, and the cause remanded, with directions that further proceedings be had in accordance herewith.

McALISTER, J., concurs.

LOCKWOOD, C. J., Specially Concurring. — I agree with the majority opinion that the judgment of the superior court must be reversed, and I also approve of many of the rules of law stated therein.

The precise issue before us is whether the complaint states a cause of action. The nature of the action and a summary of the essential facts of the complaint appear in the majority opinion. The majority of the court has held (a) that under section 5278, Revised Statutes Arizona 1913, it is the duty of the board of supervisors of Pinal county "to levy and cause to be collected a tax . . . sufficient to pay the interest on all bonds issued when such interest shall become due," and that such duty is not exhausted by one levy, but is a continuing one until the interest which becomes due is fully paid; (b) that when the principal of any bond so issued becomes due, if the same is not called for payment by the county treasurer, the interest continues until such time as the bonds are so called; (c) that the unpaid interest coupons do not draw interest after they become due; and (d) that it is only when it reasonably appears that delinquent taxes are not collectible that a new levy must be made to make up the delinquencies. With all four of these rules of law I agree. The only point where I differ from the majority is in regard to whether, where it appears that a tax is delinquent, it is incumbent on plaintiff in an action of this nature to plead (and therefore to prove, if the case goes to trial) that the delinquent tax is not collectible, or whether the fact that the tax has not been collected raises a presumption of law that it is uncollectible, and that its actual collectibility is a matter of defense.

Under the law of Arizona, the real property tax is levied in August of each year and becomes due in two installments, which are delinquent respectively

in November and May after the tax is levied. It is the imperative duty of the county treasurer not later than the first day of November after the May installment has become delinquent to offer for sale all the real property on the delinquent list, or so much thereof as is necessary to pay the delinquent taxes. If any person bids on the property so offered, the purchaser must pay the amount of his bid in cash, the state has received the full amounts of the tax levied, and is no longer interested in the question, leaving it for the purchaser at the tax sale to settle further issues with the owner of the property so sold in accordance with the law. If on the other hand no bid sufficient to pay the tax is made, the property must be struck off to the state of Arizona, and the taxes assessed against such property are declared not to be payable until the state sells the property or until it is redeemed in the same manner as provided when it is sold to private parties. It will thus be seen that if the county treasurer does his duty, all taxes will be paid in full within approximately eighteen months after the levy is made, or the property will be struck off to the state because no one is willing to bid the amount of the taxes therefor, which certainly would raise a reasonable presumption that such taxes are uncollectible.

If the taxes are uncollected a year after the November in the year in which they are levied, there can be but one of three, and only three, possible reasons therefor: (a) That the treasurer has done his duty and offered the property for sale and was unable to get a bid for the amount of the tax; (b) that the public officers charged with the collection of the tax have been prevented from doing their duty by an injunction arising out of some litigation in regard to the validity of the tax; and (c) that those officers have failed and neglected to perform their duty in

regard to the collection of taxes. When, therefore, plaintiff alleged in its complaint that the taxes levied to meet the interest payment due up to May 1, 1933, had not been collected, it was in effect an allegation that one of the three reasons above set forth for the noncollection existed. Was it necessary, then, for it to allege which was the true reason? If this were an action on a bond given by the ordinary defendant to the plaintiff, it would unquestionably be held that as a matter of pleading, when plaintiff had shown the promise to pay, the duty to pay, and the failure to pay, he had made a *prima facie* case and it was incumbent upon the defendant to show a legitimate excuse for nonpayment. Such a rule of pleading is not only age-old but is founded upon sound considerations of justice. Not only is it the duty of a man who fails to keep his solemn obligation to give an excuse therefor, but it is peculiarly within his knowledge as to whether a legal excuse exists or not, and merely because the plaintiff in this case happens to be the holder of a bond given by a municipal corporation, cannot in reason and in justice change the rule. Pinal county promised to pay the interest on its obligation at certain times, and to both levy and collect a tax sufficient for this payment. Plaintiff has alleged it has failed to keep its solemn promise. If there be a legitimate excuse therefor, it would certainly seem by analogy and on the plainest principles of justice and common sense that it is for defendants, who are in a far better position than plaintiff, to know the true reasons for such failure, at least to plead them.

It seems to me that the majority opinion has confused the question of what defenses are available to defendants, which is a matter of substantive law, with the question of whether they must set them forth in their answer, which is a rule of pleading.

It may well be that there are available to defendants in a case like this some defenses which would not be available to a private individual, but I can see no reason why the same rule of pleading should not be applicable to the one as to the other. The rule of pleading which I believe the law could never work an injustice to defendants or to a taxpayer of Pinal county, for if as a matter of fact there is reasonable ground to believe that the delinquent tax may eventually be collected, the defendants are certainly in the best position to know and state it, while if on the other hand it is uncollectible or it is the failure of the defendants and the officers of Pinal county to do their duty which has caused the delinquency, they should be compelled to act as soon as that fact appears, and not to in effect evade a just debt by compelling the plaintiff to anticipate all defense which the defendants might and should have interposed, and plead and prove a negative thereto.

It seems to me that the rule laid down by the majority is not only contrary to the fundamental principles of justice and of pleading, but is also one which is calculated in the long run to do serious harm to the state of Arizona. Our credit for our state and municipal bonds has always been high. This is due to the fact that, until recently at least, we have always kept our promises. It is true that of recent years, due to the long period of depression through which our country is passing, that some of our municipalities have not maintained their previous excellent records. This, experience tells us, is bound to react to our disadvantage when in the future we again endeavor to borrow money for public purposes. If our creditors believe that the default was due to circumstances beyond our control, and that our public authorities have always done their best to see that our promises were kept as made, the harm will be

only temporary. If, however, they come to believe that our courts are adopting unjust rules of law to assist our municipalities in delaying or avoiding their obligations, the reaction is bound to be severe. The history of our nation shows that those states and municipalities which have in time of stress attempted to evade their just obligations, have in the long run paid dearly for that attempt. As a matter of public policy, if nothing else, I think the public authorities of Arizona, and particularly the courts, should endeavor to be scrupulously careful that our obligations are met, or that if they are not that the charge cannot be fairly placed against us that we are attempting to evade them. I think the case should be reversed on the ground that it does state a cause of action against defendants, not only so far as interest upon bonds due and unpaid is concerned, but also so far as all interest due and unpaid up to and including May 1, 1933, is concerned, with leave to the defendants to answer and show, if they may, any legal excuse for not levying an additional tax to meet the interest payments above referred to.