[Civil No. 4472. Filed October 19, 1942.]

[130 Pac. (2d) 43.]

BOARD OF SUPERVISORS OF YUMA COUNTY, STATE OF ARIZONA, and M. N. FORMAN, GEORGE HAGELY and FRANK GANDOLFO, constituting the members of said Board of Supervisors; and THE BOARD OF DIRECTORS OF THE GILA VALLEY POWER DISTRICT, and IKE PROEBSTEL, L. REITMAN, WAYNE T. WRIGHT, L. C. SPAIN and H. J. WOODHOUSE, constituting the members of the Board of Directors of the Gila Valley Power District, Appellants, v. MINERS AND MERCHANTS BANK, BISBEE, ARIZONA, a Corporation, Appellee.

Mr. R. C. Bennett, and Messrs. Moeur & Moeur, for Appellant Board of Directors.

Mr. Peter C. Byrne, for Appellant Board of Supervisors.

Mr. R. N. Campbell, for Appellee.

LOCKWOOD, C. J.—Miners and Merchants Bank, a corporation, plaintiff, filed a petition for a writ of *mandamus* against the board of supervisors of Yuma county, called the supervisors, and the board of directors of the Gila Valley Power District, called the directors, seeking to compel them to include in the budget of the district certain items. An alternative writ was issued and after a motion to quash and dismiss the petition was denied, the case was heard on its merits before the court without a jury, after which the alternative writ was made peremptory, and this appeal was taken.

The factual situation on most points is not in serious dispute, and may be stated as follows: The district is a power district organized and existing under the provisions of chapter 173 of the Session Laws of 1919. In 1925 it issued $255,500 in bonds, under the provisions of chapter 173, *supra*. Sections 21 and 22 of said chapter read, so far as material, as follows:

"Section 21. Said bonds and the interest thereon, shall be paid by revenue derived from an annual as-

sessment and levy of taxes upon the real property of the district, and the real property of the district shall be and remain liable to taxation for such payments. Any tract or tracts of land in any district, upon payment made at any time before the maturity of said bonds, of the proportion of the bonded indebtedness of said district which the acreage of said tract or tracts of land bears to the total bonded acreage of said district together with interest on said amount up to the next following interest paying day, shall be released and discharged from further tax levy for the payment of the principal and interest of the bonded indebtedness of the district then existing, except as in this otherwise provided for said tract or tracts of land shall be held liable for assessment and levy for all other obligations of the district, in event of default at maturity of any of said bonds, said lands shall be held liable for that proportion of the defaulted bonded indebtedness which the acreage of said tract or tracts of land bear to the total bonded indebtedness of the district.

"It shall be the duty of the board of directors on or before June 1st, of each year, to make estimates of the amount of money required to meet the obligations of the district for the next fiscal year including maturing bonds and interest, maintenance, operating and current expenses, together with such additional amount, as may be necessary to meet any deficiency in the payment of said items incurred during the previous year, and to provide funds for tax sale purchases of delinquent district lands; such estimates shall be fully itemized so as to show amounts required for each of the specified funds into which the money of the district is divided by the treasurer, and the total amount of such itemized estimates, entering such estimates in full upon the records of the district and transmit a certified copy thereof to the board of supervisors of each county in which any lands of such district are located, together with a certified copy showing the total number of acres of taxable lands of such district and description of such portions thereof as are situated in each of the counties respectively, and shall include therein all lands within the boundaries

of such district, except such as have been excluded by orders made in pursuance of this act.

. . . . . . . . . . .

"Section 22. It shall be the duty of the board of supervisors of the county in which is located the office of any power district, immediately upon the receipt of the returns of the total assessment of said district, and upon the receipt of the certificate of the board of directors certifying the total amount of money required to be raised as herein provided, to fix the rate of levy necessary to provide the amount of money required to pay the interest and principal of the bonds of said district as the same shall become due, also, to fix the rate necessary to provide the amount of money required for any other purposes as in this chapter provided, and which are to be raised by the levy of assessments upon the real property of said district, . . . The rate of levy necessary to raise the required amount of money on the assessed valuation of the property of said district shall be increased fifteen per cent. to cover delinquencies. . . . All taxes or assessments levied under this chapter are special taxes and shall be liens upon the lands against which they are assessed, and, whenever the full title to any land within the district is acquired under the public land laws, from the state or the United States, the amounts of any and all taxes in this chapter provided for, which have been levied against said land and which remain unpaid, shall become immediately due and be collected in the same manner as other delimquent [delinquent] taxes are collected; provided that all of the burdens, obligations, liabilities and liens existing against other lands, in private ownership, embraced within such district, by reason of the organization of such district, or in any wise connected with, incident to, or arising from or by reason of the existence of such district, or any obligations thereof, are hereby declared to be and by operation of law, are extended with full force, power and effect to and upon any and all lands possessed and held by virtue of a certificate of purchase issued by the State Land Department of the State of Arizona.

"Should the board of directors neglect, fail or refuse to provide the estimates and certificates as the basis for levy and collection of taxes at any time, the board of supervisors shall make such levy in such amount as they may deem sufficient for the purpose of the district for any fiscal year. Such board of supervisors, upon the request of any person holding any fully matured unpaid and undisputed evidence of district indebtedness, shall make such levy of taxes upon the taxable property of the district as will provide for the payment of such indebtedness of the district held by such person and such other indebtedness as shown by such person to exist, and levies so made shall be collected and enforced in the same manner as regular assessments and tax levies for district purposes.

"Should the directors of the district, any board of supervisors, or officer of any board, or any county assessor or tax officer of any county neglect or refuse to perform such official acts as may be necessary to give effect and create lien of taxes, and collection of taxes, under the provisions of this act required to be assessed, levied and collected, any person holding evidence of any matured, unpaid and indebtedness of the district, may compel the doing of any such official act and acts by writ of *mandamus,* in application for which may be joined as defendants all directors, board and officers whose neglect, failure or refusal may be the cause of complaint, and the court in any such writ may make such order as will give the party complaining full relief."

In 1928 the then board of directors of the district adopted a resolution to the effect that there should be an annual levy in the sum of $14,704 for a sinking fund to pay the principal of said bonds when and as due. Pursuant to the provisions of section 21, *supra,* the directors prepared a budget for the fiscal year commencing July 1, 1941, and, in certifying the total number of acres of taxable lands of the district as required by law, included some thirty thousand acres of land, the title to which had passed to the state of Arizona through sale for delinquent taxes, and nearly

four thousand acres of land which had paid its proportion of the bonded indebtedness, as provided in section 21, *supra*. At the time the budget was thus prepared there was due and unpaid interest on said bonds of over $100,000, though taxes had been levied in previous years in an amount sufficient to pay them, but these taxes were unpaid and delinquent. No estimate was made in the budget for the payment of this indebtedness, nor was any estimate made for a sinking fund, as provided by resolution of the directors in 1928. The supervisors were requested by plaintiff to add to the budget as submitted by the directors an amount sufficient to pay the delinquent taxes aforesaid, and the amount required by the resolution of the directors in 1928 for a sinking fund, and to make the levy for the total budget only against the lands not owned by the state of Arizona which had not paid their proportion of the bonded indebtedness, under section 21, *supra,* as aforesaid. This the supervisors declined to do, and made their levy in accordance with the budget as made by the directors and on all the lands certified in the district, including state lands and those which had paid their proportion of the bonded indebtedness.

Upon the hearing, the court granted all the prayers of the petition and ordered the supervisors to make a levy for an amount including all of the delinquent interest and sinking fund aforesaid, and that such levy be made only upon the lands of the district remaining after the state lands and those which had paid out, as aforesaid, were deducted.

The first question which we consider is whether the court erred in failing to quash the writ and dismiss the petition on the ground that *mandamus* did not lie under the facts as stated in the petition. It is urged (a) that no timely demand was made upon the di-

rectors for the budgetary relief sought, (b) that plaintiff did not show an interest in the subject matter which entitled it to ask for relief, (c) that there was no allegation that the taxes theretofore levied for the delinquent interest were uncollectible, and (d) that the resolution of the board of directors in regard to a sinking fund in 1928 was not binding on later directors.

The motion to quash made in the court below did not include the grounds set forth in (a), (b) and (d), and these points were not urged in the trial court. We think, therefore, they fall under the well known rule that questions which were not presented to the trial court may not be raised for the first time on appeal. *City of of Glendale* v. *Coquat,* 46 Ariz. 478, 52 Pac. (2d) 1178, 102 A. L. R. 837. Even, however, if they were properly raised here, we think that so far as (a) is concerned, section 22, *supra,* which expressly authorizes the bringing of *mandamus* proceedings, does not require as a condition precedent that any demand to correct the estimate and certificate be made upon the board of directors of a district. All that is necessary is that the directors have failed to perform their statutory duty.

Apparently (b) is based upon the claim that it does not appear just how great an interest plaintiff had in the subject matter of the action. It is admitted that plaintiff was the owner of some of the bonds upon which interest was delinquent, and this clearly brings it within the statute. It is not merely the large bondholder who is protected, but the small one as well.

So far as (d) is concerned, plaintiff has practically admitted in its brief that it is not entitled to have a levy made for a sinking fund because the action of the directors in 1928 was not binding on the present board. The mere fact, however, that more relief is prayed for in the petition for *mandamus* than can

properly be granted, does not require that the writ be quashed, if any of the relief asked for is proper. *Miners & Merchants Bank* v. *Herron,* 46 Ariz. 71, 47 Pac. (2d) 430; *State* v. *Jessup & Moore Paper Co.,* 1 Boyce, Del., 379, 77 Atl. 16, 30 L. R. A., (N. S.) 290.

This leaves for consideration (c), which is that there was no allegation that the taxes theretofore levied for the delinquent interest were uncollectible. We consider then the law upon this subject.

Plaintiff relies upon the following portion of section 21, *supra:*

"It shall be the duty of the board of directors on or before June 1st, of each year, to make estimates of the amount of money required to meet the obligations of the district for the next fiscal year including maturing bonds and interest, maintenance, operating and current expenses, *together with such additional amount, as may be necessary to meet any deficiency in the payment of said items incurred during the previous year, . . . ."* (Italics ours.)

And it is urged that the italicized phrase requires that when any interest for previous years is unpaid, another levy must be made to cover such delinquent payment.

The supervisors and directors rely upon our decision in *Miners & Merchants Bank* v. *Herron, supra* [46 Ariz. 71, 47 Pac. (2d) 434], wherein the court said:

"In the absence of an affirmative allegation or showing of the improbability of collecting the delinquent taxes because of dereliction of duty by the taxing officers, or other good and sufficient reason, we think plaintiff's right is very doubtful, that it certainly is not clear, and that in such circumstances the writ should not issue. It is on the plaintiff to show his right to the writ, not on the defendant to show he has no clear right to it. The burden of alleging and proving the right is up to him who asserts it."

■ We think that principle applies to the present situation. If a second levy is made, as requested by plaintiff, and thereafter the delinquent taxes are collected, as presumably they will be either by voluntary payment or sale of the property affected thereby, there would be a double taxation for a single purpose. We think, therefore, that unless it appears the strong probability is that the delinquent taxes will not and cannot be collected, *mandamus* should not be issued to compel a second levy for the purpose for which the delinquent taxes were assessed.

■ What is the showing made as to their uncollectibility? These delinquent taxes, according to the record, were levied upon all of the lands of the district, regardless of whether such lands had paid out, under section 21, *supra,* or were held by the state of Arizona under tax deeds following the sale for delinquent taxes. We think that if a levy is made against lands which are not subject to taxation for that purpose, it may certainly be assumed that such levy is uncollectible.

So far as lands which had passed to the state by virtue of a tax deed are concerned, we think there can be no question. Paragraph 4845, R. C. S. A. 1913, expressly provides that the only method of divesting a tax lien is by payment of the tax or sale for delinquent taxes. There has been no change in this rule except that a third method of foreclosure of a mortgage to the state was added in 1931. Laws 1931, c. 103. *State* v. *Martin, ante,* p. 438, 130 Pac. (2d) 48. Under our tax sale procedure, after the period of redemption has expired and a deed has finally issued to the purchaser, all previous tax liens are wiped out and the land is in no manner subject thereto. The Constitution of Arizona expressly provides that the property of the state is not subject to any form of taxation. Sec. 2,

Art. 9, Const. of Arizona. So long, therefore, as the land is owned by the state after tax deed is issued it is not subject to taxation for district purposes, and the tax lien for taxes thereon previously existing for those purposes is wiped out. We think, therefore, that so far as such lands are concerned the taxes which had been levied thereon are uncollectible.

So far as the lands which had paid out their bonded indebtedness are concerned, section 21, *supra,* expressly says they "shall be released and discharged from further tax levy" except under certain circumstances which had not arisen at the time this proceeding was started. If, therefore, any of the delinquent taxes had been levied against any of such classes of lands, they were obviously uncollectible, and the directors and the supervisors were required to make an additional levy to cover such delinquent taxes. The amended petition alleges that much of the delinquent taxes were on state lands, but it does not show how much of the unpaid delinquent interest was represented by the uncollectible tax thereon, or on lands which had been paid out, and how much was represented by taxes which are still a valid lien upon lands of the district subject thereto, and, therefore, presumably collectible. We think that while a motion to make the complaint more definite and certain as to the amount of taxes uncollectible for these reasons and for which, therefore, a new levy should have been made, would have been proper, the trial court properly refused to quash the writ and dismiss the action.

The next question is as to whether the court properly rendered its judgment. In view of what we have already said, it is obvious that the judgment, so far as it commanded the supervisors and the directors to add to the budget the amount provided for as a sinking fund in the resolution of May 12, 1928, was

improper, and that since the record does not show how much of the delinquent interest was uncollectible, under the rule above set forth that portion of the judgment directing a levy to be made for all such delinquent interest cannot stand. Since, however, there is one other important question raised, which will necessarily need determination if the case be sent back to the trial court for further action, we discuss it also.

■ It is whether the supervisors are without jurisdiction to budget for a power district except upon the total failure of the board of directors to make any budget for the district. The duty of the supervisors in these premises is covered by the provisions of section 22, *supra*. An examination thereof satisfies us that if any person to whom the district is legally indebted shows that a levy has not been made in the budget of the district of taxes to provide for the payment of his indebtedness, or that levies previously made are uncollectible, it is the duty of the supervisors to make provision therefor, and for all other indebtedness in the same situation, and this right and duty applies to an insufficient budget as well as to a condition when no budget at all was made.

There are other matters raised, but in view of what we have said we think it unnecessary to discuss them.

Upon the whole issue we hold, therefore, that upon a showing that there was any "fully matured unpaid and undisputed evidence of district indebtedness," it was the duty of the supervisors, in case such indebtedness was not provided for in the budget submitted by the district, or by taxes previously levied and which were not shown to be uncollectible, to correct the budget by making a levy to provide for such indebtedness, and further that the levy for such indebtedness should be made only against the property in the district which

was subject for taxation therefor under the views expressed herein.

The judgment of the superior court of Yuma county is reversed and the case remanded for further proceedings under this opinion, with leave to both parties to amend their pleadings, and to offer such further evidence as may be proper in support of such pleadings.

McALISTER and ROSS, JJ., concur.