[Civil No. 4721.   Filed July 2, 1945.]

[160 Pac. (2d) 338.]

ANDREW J. STEPHENS and Wife, MARTA STEPHENS, Appellants, v. W. A. THOMASSON, Appellee.

Mr. L. E. Canfil, Mr. Stanley Samuelson, Messrs. Jennings and Salmon, and Mr. Ozell M. Trask, for Appellants.

Mr. Tom Fulbright, and Messrs. Kramer, Morrison, Roche and Perry, for Appellee.

STANFORD, C. J.—This case is the outgrowth of an action filed in Hudspeth County, Texas, in 1933, wherein R. Hannah, doing business as The Hannah Construction Company, Fred Hall and Dan Hall and

the Great American Indemnity Company were the original parties defendant. Later this defendant was made a party and thereafter the action was transferred to the District Court of El Paso County, Texas, where the action against all defendants except this one was dismissed. The case was there heard by the court, this defendant not being present.

We will hereinafter style the parties as plaintiffs and defendant as they were in both cases below.

The judgment of the District Court of El Paso County, Texas, was brought to this state where the plaintiffs sued the defendant, and the case was tried by a jury. This is therefore a "full faith and credit" action brought in this state on a judgment from the sister-state of Texas.

The defendant has claimed by his answer that he was not a party to the action when originally brought in the State of Texas, but later was approached by plaintiff M. J. H. Stephens and his attorney, Robert L. Holliday, who advised him that in order to procure a judgment against the original defendants it would be necessary to make him a party to the action; that defendant was induced to forego the employment of counsel, but to sign papers pertaining to the case as the same were presented to him by Robert L. Holliday; that defendant was promised that no judgment would be taken against him; that the purpose of having defendant to appear in the Texas case was to enable plaintiffs to obtain a judgment against the other defendants; that defendant relied on the said statements and did forego the consultation of counsel of his own choosing and did sign the papers presented to him by plaintiff Stephens and his attorney, including a document transferring the Texas case from one county to another.

At the close of the evidence at the trial in this state, counsel for plaintiffs moved for a directed verdict as follows:

"If your Honor pleases, at this time the plaintiff wishes to and does make a motion for a directed verdict because of the fact that the evidence does not show any sufficient proof on the defense to a foreign judgment duly authenticated and admitted in evidence, and on no reasonable hypothesis of any kind or character is it disputed or can it be disputed."

This motion was denied and later a verdict was rendered on behalf of defendant. From the judgment granted, and from all interlocutory or intermediate orders in said case before judgment, and from the denial of plaintiffs' motion for a new trial, plaintiffs appeal.

Plaintiffs offer but one assignment of error, which is as follows:

"The Court erred in denying plaintiffs' motion for a directed verdict, since plaintiffs' suit was based upon a judgment of a sister state, which judgment, properly authenticated, was introduced in evidence."

The issue that the plaintiffs present here is that a judgment from a sister-state may not be impeached for fraud.

Section 1 of article 4 of the Constitution of the United States reads:

"*Full faith and credit to records and judicial proceedings of states.*—Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

Plaintiffs quote, in support of their judgment, 31 Am. Jur., Judgments, sec. 541:

"It has been declared that recognition and effect may not be denied judgments rendered by courts of sister states, as distinguished from judgments rendered by courts of foreign nations, because of fraud in obtaining them. Under this rule, it is deemed necessary for a person against whom a judgment has

been obtained by fraud to seek relief in the jurisdiction in which the judgment was rendered. There are, however, cases in which a judgment rendered in another state has been held or declared subject to nonrecognition on the ground of fraud. This rule has been applied where the fraud goes to the jurisdiction of the court, or constitutes a fraud upon the law of the forum, or operates to deprive the party against whom the judgment was rendered of an opportunity to defend the action when he had a meritorious defense thereto. This rule has been limited, however, to such fraud as may be set up against the judgment in the court which rendered it.

"As to a judgment rendered by a court of a foreign country, fraud is usually regarded as sufficient reason for denying the judgment recognition or effect. In this respect, it is immaterial whether the judgment is *in personam* or *in rem.*"

We find this further statement from 31 Am. Jur., Judgments, sec. 549, to be applicable:

"In granting full faith and credit, recognition, or conclusiveness to a foreign judgment, reference is frequently made to the fact that the court which rendered the judgment was one of competent jurisdiction. Indeed, the clause of the Federal Constitution which requires full faith and credit to be given in each state to the records of judicial proceedings of every other state applies to records and proceedings of courts only so far as they have jurisdiction, and the courts of one state are not required to give full faith and credit to, or regard as valid or conclusive, any judgment of a court of another state, which had no jurisdiction of the subject matter, or of the parties, or, in proceedings *in rem,* of the *res.* Accordingly, the jurisdiction of a court rendering a judgment is open to inquiry under proper averments, when questioned in the court of another state. The party against whom the judgment is rendered is not forced to go to the state of the rendition of the judgment for relief. . . . ."

Appellants cited, among other cases, *Christmas* v. *Russell,* 5 Wall. 290, 18 L. Ed. 475; *Williams* v.

*State of North Carolina,* 317 U. S. 287, 63 Sup. Ct. 207, 87 L. Ed. 279, 143 A. L. R. 1273 and *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 43, 64 Sup. Ct. 208, 88 L. Ed. 149, 150 A. L. R. 413.

Defendant has raised the issue that a question not presented to the trial court cannot be raised for the first time on appeal. The plaintiffs made a motion for a directed verdict, ''because of the fact that the evidence does not show any sufficient proof on the defense to a foreign judgment duly authenticated and admitted in evidence, and on no reasonable hypothesis of any kind or character is it disputed or can it be disputed.'' The motion, which now is relied on as the assignment of error heretofore quoted, does not intimate that a judgment of a sister-state may not be impeached for fraud as set forth in plaintiffs' proposition of law following their assignment of error. We think the defendant's claim in this respect at least merits our attention.

We quote from *Board of Supervisors* v. *Miners & Merchants Bank,* 59 Ariz. 460, 130 Pac. (2d) 43, 46:

''The motion to quash made in the court below did not include the grounds set forth in (a), (b) and (d), and these points were not urged in the trial court. We think, therefore, they fall under the well known rule that questions which were not presented to the trial court may not be raised for the first time on appeal. *City of Glendale* v. *Coquat,* 46 Ariz. 478, 52 Pac. (2d) 1178, 102 A. L. R. 837. . . . ''

Again referring to the principal question in this case, whether fraud in obtaining a judgment in one state constitutes a defense to a suit on such judgment in a sister-state, we quote from *Cole* v. *Cunningham,* 133 U. S. 107, 10 Sup. Ct. 269, 270, 33 L. Ed. 538, where Justice Fuller said:

''The question to be determined is, whether a decree of the supreme judicial court of Massachusetts,

restraining citizens of that Commonwealth from the prosecution of attachment suits in New York, brought by them for the purpose of 'evading the laws of their domicile, should be reversed upon the ground that such judicial action in Massachusetts was in violation of article 4, §§ 1 and 2, of the constitution of the United States. . . .

" 'And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken.'

"This does not prevent an inquiry into the jurisdiction of the court in which a judgment is rendered to pronounce the judgment, nor into the right of the state to exercise authority over the parties or the subject-matter, nor whether the judgment is founded in, and impeachable for, a manifest fraud. . . . "

The testimony in this case shows that Robert L. Holliday was the attorney for the plaintiffs in the Texas court as well as in the trial in Arizona. Holliday testified in this case that he was interested in the case from the standpoint of his fee, which he said was either one-third or one-half of the amount recovered. He also said that he advanced the cost and testified that when he first brought the action he did not bring it against the defendant herein. Further testifying he said:

"Q. Isn't it true Stephens told you he didn't want to sue Bill Thomasson? A. Well, he didn't put it just that way.

"Q. How did he put it? A. He put it this way: He told me the fact that he knew him and of course he was hiring a lawyer and he naturally would not tell any lawyer how to bring the suit. He gave me the facts as best he could and I looked up the statute, thinking that the bond might be good, and there wasn't anything to gain by suing a poor fellow like Thomasson if I could hook the surety company, and I sued the main contractor and the bondsman. It later

developed on the plea of privilege and the testimony taken in Sierra Blanca, I don't remember whether it was on the first or second hearing, but it developed that Thomasson was not an employee of Hannah and Hall, but was an independent contractor under the laws of our State and therefore it became necessary for me to file suit.''

The defendant testified in the Arizona court:

''A. Well, Mr. Holliday at one time asked me to sign a paper to remove the case from Hudspeth County to El Paso County, that it would help him, his mileage and so forth.

''Q. Do you recall about when that was? A. I don't remember definite, no.

''Q. Well, now, your county where you lived in, that was Hudspeth County? A. That is correct.

''Q. But Holliday was a lawyer at El Paso? A. Yes, sir.

''Q. Did you sign some paper to move the case out of your home county? A. I signed two papers, yes.

''Q. Well, this was to move the case from the county where you lived to El Paso County, was Stephens there when you signed that paper? A. I don't remember if Stephens was there.

''Q. Well, now, what did Mr. Holliday tell you when you signed that paper to move the case out of Hudspeth County to El Paso County? A. Well, Mr. Holliday informed me through the conversation that he didn't want to prosecute me in the case.

''Q. What was the county seat of Hudspeth County? A. Sierra Blanca.

''Q. How far is that from El Paso? A. Approximately 100 miles; that is, I would say 85 to 100 miles, close to 100 miles.

''Q. Now, were there any other occasions when Stephens and Holliday or both of them told you that there would be no judgment ever taken against you? A. Well, Mr. Holliday never told me that but once or twice. Steve told me repeatedly.

''Q. Many times? A. Well, several times.

''Q. Will you tell the jury why you didn't employ any counsel in this case, any lawyer? A. Well, I be-

lieved that Mr. Stephens, he told me that he would never bother me in this case if he never received a penny.

"Q. And did you believe that? A. Yes, sir, I did."

We quote from the case of *Perkins* v. *Benguet Consol. Mining Co.*, 55 Cal. App. (2d) 720, 132 Pac. (2d) 70, 85:

"It is well settled that a state is not required to recognize the judgment of another state, or of a territory or country subject to the jurisdiction of the United States, where the judgment was rendered by a court without jurisdiction or where it has been obtained by extrinsic fraud. . . . "

Plaintiffs have quoted from the cases of *Simmons* v. *Saul*, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054, and *Nicolson* v. *Citizens & Southern Nat. Bank*, D. C. 1943, 50 Fed. Supp. 92, but we believe the language of the case of *Williams* v. *North Carolina*, 317 U. S. 287, 63 Sup. Ct. 207, 210, 87 L. Ed. 279, 143 A. L. R. 1273, also quoted by plaintiffs, embraces the problem before us, and we quote:

" . . . the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States."

From the testimony we find that the fraud alleged could have been asserted against the Texas judgment in the court where it was rendered.

From the case of *Krummen* v. *Still*, 146 S. W. (2d) 288, 290, decided by the Court of Civil Appeals of Texas, we quote:

"Appellees had the right to impeach appellant's Arkansas judgment against them on allegations of fraud, and the facts alleged constitute fraud in the procuring of the judgment sufficient to set it aside. The following proposition is announced by 27 Tex. Jur., 575: 'When a sister-state judgment is assailed

in Texas the attack is, of course, collateral, and in order for such an attack to be successful the judgment must be void. If the sister-state court had jurisdiction of the person of the defendant and of the subject matter of the suit, its judgment imports absolute verity and precludes further examination. But this does not mean that the judgment of a court of a sister-state may not be impeached when the grounds of attack are sufficient as, for example, want of jurisdiction of the subject matter, or of the person of the defendant, or for fraud in the procurement of the judgment. This is so because the full faith and credit clause of the Constitution refers to judgments rendered by courts having jurisdiction over the person of the defendant and the subject matter in litigation.' "

In the recent case of *Williams* v. *State of North Carolina,* 325 U. S. 226, 65 Sup. Ct. 1092, 1094, 89 L. Ed. 1577, it states:

" . . . It was there held (referring to the first opinion) that a divorce granted by Nevada, on a finding that one spouse was domiciled in Nevada, must be respected in North Carolina, where Nevada's finding of domicil was not questioned . . . ."

The recent case holds that the judgment of a sister-state is entitled to full faith and credit only if there is jurisdiction. We further quote from that case:

" . . . A judgment in one State is conclusive upon the merits in every other State but only if the court of the first State had power to pass on the merits— had jurisdiction, that is, to render the judgment."

Regardless of any personalities that may have entered into this case, we are grateful to counsel on both sides for a very concise, thorough and excellent presentation through the briefs of their respective cases.

We find from the testimony that the defendant was induced by fraud to submit himself to the jurisdiction of the Texas court.

The judgment is accordingly affirmed.

LaPRADE and MORGAN, J. J., concur.